Richard JACOBY, Freddie Mae Green, Curtis Ivy, Jean Marrow, Elsie Sanchez, Evan Sanders, George Thomas, Barbara Whittaker, and Shirley Williams *v.*
ARKANSAS DEPARTMENT OF EDUCATION, Vocational and Technical Education Division

97-310                                          962 S.W.2d 773

Supreme Court of Arkansas
Opinion delivered February 19, 1998

[Petition for rehearing denied March 26, 1998.]

*Lavey & Burnett*, by: *John L. Burnett*, for appellants.

*Winston Bryant*, Att'y Gen., by: *Kay J. Jackson DeMailly*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. The appellants in this case (the employees) are hourly-paid employees of the Vocational and Technical Education Division of the Arkansas Department of Education (the Department). Their complaint is based on an allegation that the State, through the Department, has failed to pay them for all of the time they have worked. Specifically, they claim that they remained on duty each day for an eight and one-half hour shift but were paid for only eight-hour days.

The employees originally filed their complaint in federal district court and alleged a violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219 (1994 & Supp. I 1995). The Department moved to dismiss for lack of subject-matter jurisdiction, claiming that the United States Congress could not abrogate Eleventh Amendment sovereign immunity for the Department by

enacting the FLSA pursuant to the Commerce Clause of the U.S. Constitution. The employees filed a voluntary nonsuit before the motion to dismiss was decided.

The employees next filed this action in state circuit court, claiming once again a violation of the FLSA by the Department. The Department moved to dismiss based on Eleventh Amendment sovereign immunity as set out in the U.S. Constitution and state sovereign immunity under Article 5, Section 20 of the State Constitution. The Department argued that the Claims Commission had exclusive jurisdiction over all suits against the State under Ark. Code Ann. § 19-10-204(a) (Repl. 1994). The circuit court granted the Department's motion to dismiss due to sovereign immunity as provided in the State Constitution and found that the Claims Commission was the proper forum for resolution of this matter.

The question before this court is whether the circuit court correctly determined that the State Constitution bars a suit against the State when a federal claim such as one brought under the FLSA is at issue. A corollary issue is whether the Eleventh Amendment immunes the State from liability in its own courts when the federal right cannot be pursued in federal courts. We consider the corollary issue first.

*a. Eleventh Amendment Sovereign Immunity.*

The Eleventh Amendment reads as follows:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Eleventh Amendment expressly refers to the judicial power of the United States. It has been construed to grant the individual states immunity in federal court unless Congress by law abrogates that immunity or the state waives that immunity. *Welch v. Texas Dep't of Highways & Pub. Trans.*, 483 U.S. 468 (1987); *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976). It is clear in this case that the Department has not waived its sovereign immunity, and that is not an issue before us. In *Hans v. Louisiana*, 134 U.S. 1 (1890), the U.S.

Supreme Court expanded the Eleventh Amendment immunity of the states to exclude all suits by citizens of the same state in federal court.

The issue of whether Congress has effectively abrogated state sovereign immunity in federal courts for FLSA claims was effectively decided by the U.S. Supreme Court in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). In *Seminole Tribe*, the Court held that Congress can only void Eleventh Amendment immunity by enacting law that meets two requirements. First, Congress must "unequivocably express its intent to abrogate the immunity." *Seminole Tribe*, 517 U.S. at 55. It is undisputed in this case that Congress clearly intended to subject states, as employers, to FLSA claims in both federal courts and state courts. *See* 29 U.S.C. § 216(b). Secondly, according to *Seminole Tribe*, Congress must enact the abrogating law pursuant to a valid exercise of authority granted it under the U.S. Constitution. In *Seminole Tribe*, the Court held that Congress failed to meet this second criterion. The congressional act at issue required the states to enter into mediation on Indian claims and was passed under the power given Congress to regulate commerce with Indian tribes. U.S. Const. art 1, § 8 [3]. This power was not sufficient, according to the Court, to override the states' Eleventh Amendment protection against being sued for these claims in federal court.

But the Court in *Seminole Tribe* went further and overturned its decision in *Pennsylvania v. Union Gas*, 491 U.S. 1 (1989), where a plurality of the Court had previously determined that the Commerce Clause provided proper authority for Congress to abrogate Eleventh Amendment immunity for the states in federal court. The Commerce Clause was the authority by which Congress provided for FLSA claims to be filed in state and federal courts. Hence, in the wake of *Seminole Tribe*, jurisdiction of the federal courts over state employers for FLSA claims appeared to no longer exist, and several U.S. Courts of Appeal have concluded that is precisely the case. *See Close v. New York*, 125 F.3d 31 (2nd Cir. 1997); *Mills v. Maine*, 118 F.3d 37 (1st Cir. 1997); *Moad v. Arkansas State Police Dept.*, 111 F.3d 585 (8th Cir. 1997). We agree that *Seminole Tribe v. Florida, supra*, has effectively immuned state employers from FLSA claims in federal court.

The next question is whether the Eleventh Amendment provides a corresponding immunity for a state employer sued for an FLSA violation in its own courts. A commentator on this subject recently framed the issue thusly:

> Is the immunity conferred on the states by the Eleventh Amendment an immunity from liability under federal law, or is it merely an immunity from the jurisdiction of the federal courts?

Carlos Manual Vazquez, *What is Eleventh Amendment Immunity?*, 106 YALE L.J. 1683, 1700 (1997).

■ In *Hilton v. South Carolina Public Railways Comm'n*, 502 U.S. 197 (1991), the Court made the point emphatically that the Eleventh Amendment does not apply to state courts. *Hilton*, 502 U.S. at 204-05, *citing Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989); *Maine v. Thiboutot*, 448 U.S. 1 (1980); *Nevada v. Hall*, 440 U.S. 410 (1979). Indeed, the Court in *Hilton* said that it had noted this inapplicability "on many occasions[.]" *Hilton*, 502 U.S. at 205. We deem it well nigh impossible, in the face of this clear statement, for this court to accept the Department's argument that the Eleventh Amendment provides immunity in state courts as well. We hold that the Eleventh Amendment does not grant states immunity in their own courts, as the Court's pronouncement in the *Hilton* case makes abundantly clear. We reiterate that by its own terms the Eleventh Amendment is limited to the *judicial power of the United States*.

b.    *State Sovereign Immunity.*

■ We are left then with the crucial issue of state sovereign immunity granted the State of Arkansas by its own State Constitution. Article 5, § 20 of the State Constitution reads: "The State of Arkansas shall never be made a defendant in any of her courts." We have held that this protection fully protects the State absent a waiver or consent by the State to be sued. *See, e.g., Cross v. Arkansas Poultry & Livestock Comm'n*, 328 Ark. 255, 943 S.W.2d 230 (1997). There is no issue of waiver or consent by the Department in the case before us. It relies, rather, on its immunity granted under the State Constitution as a shield against the FLSA claim.

■ The formidable hurdle that the Department must leap to prevail is the Supremacy Clause of the U.S. Constitution. U.S. Const. art. 6. When Congress enacted the FLSA, this became the supreme law of the land. The U.S. Supreme Court has stated that federal law is treated "as much [the] law in the States as laws passed by the state legislature." *Howlett v. Rose*, 496 U.S. 356, 367 (1990). The FLSA states that actions "may be maintained against any employer, (including a public agency) in any Federal or State court of competent jurisdiction[.]" 29 U.S.C. § 216(b). The employees contend that though Congress did not have the authority to abrogate Eleventh Amendment immunity for the states in federal courts, its authority to mandate enforcement of this federal right in state courts remains intact. And with the full force of the Supremacy Clause behind them, the employees urge that the supreme law of the land trumps state sovereign immunity granted under the State Constitution.

Again, we find the answer to the question in *Hilton v. South Carolina Public Railways Comm'n, supra.*[1] In this six-to-two decision with one justice not participating, the Court examined whether the State Public Railways Commission could be sued in state court for a Federal Employers' Liability Act (FELA) claim, when the Eleventh Amendment has provided the states with protection against FELA suits in federal courts. The Court first observed that the notion of symmetry, that is, state immunity from liability in both state and federal courts, had much to commend it. Nonetheless, the Court refused to bow to symmetrical considerations. It focused, rather, on *stare decisis* and on the fact that the Court for 28 years had interpreted the FELA to include claims against state-owned railroads. In its decision in *Welch v. Texas Dept. of Highways & Pub. Trans., supra*, the Court had held that the Eleventh Amendment did not void state immunity in federal court for Jones Act claims. Because of the *Welch* decision and the fact that the Jones Act incorporated the FELA remedial scheme, the plaintiffs in *Hilton* dismissed the federal action and filed in state court.

---

[1] Though the employees cite *Hilton v. South Carolina Public Railways Comm'n, supra*, as pivotal authority in their brief, the Department fails to mention, much less discuss the case, in its responding brief.

The Court, therefore, adhered to its precedent that states were liable for FELA claims and noted that the *Welch* decision did not address

> the most vital consideration of our decision today, which is that to confer immunity from state-court suit would strip all FELA and Jones Act protection from workers employed by the States[.]

*Hilton*, 502 U.S. at 203. Because the FELA did impose liability on the states, the Court concluded that the Supremacy Clause made that law fully enforceable against the states in state courts.

The Court in *Hilton* did not specifically discuss the conflict between the supremacy Clause and state sovereign immunity, but it cited *Howlett v. Rose*, 496 U.S. 356 (1990), in support of its conclusion. In *Howlett*, a local school board was sued in state court by a former student who alleged that his federal rights were violated under 42 U.S.C. § 1983. The state court dismissed the lawsuit on grounds that the school board, as an arm of the state, had not waived its sovereign immunity in § 1983 cases. The Court, in a unanimous decision, noted that the state dismissal raised concern that the state court may be evading federal law and discriminating against federal causes of action. It emphasized that § 1983 was the supreme law of the land which state courts were obligated to enforce. The Court then reasoned:

> But as to persons that Congress subjected to liability, individual States may not exempt such persons from federal liability by relying on their own common-law heritage. If we were to uphold the immunity claim in this case, every State would have the same opportunity to extend the mantle of sovereign immunity to "persons" who would otherwise be subject to § 1983 liability. States would then be free to nullify for their own people the legislative decisions that Congress has made on behalf of all the People.

*Howlett*, 496 U.S. at 383. As a result, the Court held that § 1983, as the supreme law of the land, overcame any protection invoked by the school board for state sovereign immunity.

There is precedent in state courts for our holding here today. In *Clover Bottom Hospital and School v. Townsend*, 513 S.W.2d 505 (Tenn. 1975), the Tennessee Supreme Court addressed an issue comparable to what confronts us in the instant case. In *Townsend,*

several people sued to recover unpaid wages against the state hospital pursuant to the FLSA in federal court. The suit was dismissed for lack of federal-court jurisdiction under the FLSA as it was then written.[2] The plaintiffs sued next to enforce their FLSA claims in state court, and the state hospital moved to dismiss the action due to state sovereign immunity granted under the Tennessee Constitution. The trial court denied the motion, and the Tennessee Supreme Court affirmed. In doing so, the court adopted the reasoning of Justice Marshall in *Employees v. Missouri Public Health Dept.*, 411 U.S. 279 (1973), where he concurred in that decision but underscored the principle that by empowering Congress to regulate commerce, the states necessarily surrendered "any portion of their sovereignty that would stand in the way of such regulation." *Townsend*, 513 S.W.2d at 507, *quoting Employees v. Missouri Public Health Dept.*, 411 U.S. at 288–89, (Marshall, J., concurring). *See also Parden v. Terminal R. Co.*, 377 U.S. 184, 192 (1964), *overruled in part by Welch v. Texas Department of Highways & Pub. Trans., supra.*

■ We agree with the *Townsend* conclusion but, again, underscore the point that in our judgment *Hilton v. South Carolina Public Railways Comm'n, supra*, and *Howlett v. Rose, supra*, decide this issue. Here, the FLSA expressly provides that state courts have jurisdiction over these claims. 29 U.S.C. § 216(b). Furthermore, state employees like the employees in the instant case are clearly entitled to file FLSA claims against state agencies as employers. 29 U.S.C. § 216(b); 29 U.S.C. § 203(d); 29 U.S.C. § 203(x). *See also Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528 (1985). As already noted, we do not deem the fact that *Seminole Tribe v. Florida, supra*, has struck down state liability for FLSA claims in federal courts as determinative of state liability in its own courts. The FLSA remains valid law protecting employees and empowering them to enforce claims for unpaid wages. This law

---

[2] The federal district court apparently dismissed the claim because of *Employees v. Missouri Public Health Dept.*, 411 U.S. 279 (1973), where the Court held that Congress had not adequately expressed an intent in the FLSA to counter the Eleventh Amendment immunity for state employers in federal court. The FLSA was later amended to express that intent. *See* Pub. L. No. 93-259 § 6(d)(1) (1974).

remains the law throughout the land, and state sovereign immunity cannot impede it.

■ There is, of course, a uniformity consideration inherent in the principle of supreme law of the land. If the matter is left to the individual states to determine whether state sovereign immunity offers state employers sufficient protection, the result may well be a patchwork quilt of FLSA enforcement with some state courts permitting FLSA claims against state employers and other state courts declining to do so.

We are mindful of the fact that in the past several state appellate courts have not been persuaded that the Supremacy Clause preempts the immunity of a state sovereign against suit in its own courts. *See, e.g., Morris v. Massachusetts Maritime Academy*, 565 N.E.2d 422 (Mass. 1991); *Widgeon v. Eastern Shore Hosp. Ctr.*, 479 A.2d 921 (Md. 1984); *Lyons v. Texas A&M Univ.*, 545 S.W.2d 56 (Tex. Civ. App. 14 Dist. 1977); *Mossman v. Donahey*, 346 N.E.2d 305 (Ohio 1976); *Weppler v. School Bd. of Dade County*, 311 So. 2d 409 (Fla. App. 3 Dist. 1975); *Board of Comm'rs v. Splendour Shipping & Ent. Co.*, 255 So.2d 869 (La. App. 4 Dist. 1972); *Gross v. Washington State Ferries*, 367 P.2d 600 (Wash. 1961); *Maloney v. New York*, 144 N.E.2d 364 (N.Y. 1957).

This point of view is perhaps best typified by the Massachusetts Supreme Court in *Morris v. Massachusetts Maritime Academy, supra.* In *Morris*, a cadet (Morris) was killed in a fire on a state training vessel owned by the state, and Morris's estate sued the state Maritime Academy in state court on an admiralty claim for violation of the Jones Act. Jurisdiction for such actions against the state in federal court had previously been held to be foreclosed by the Eleventh Amendment. *See Welch v. Texas Dept. of Highways and Pub. Trans., supra.* The Maritime Academy moved to dismiss on grounds that the state was immune from suit by virtue of its sovereign immunity. The trial court denied the motion, and the Massachusetts Supreme Court affirmed because the Maritime Academy had consented to the suit.

In its decision, however, the Massachusetts Supreme Court observed that in a line of cases from *Hans v. Louisiana, supra*, forward there was an indication that the U.S. Constitution was

confirmed with the implied assumption that state sovereign immunity would continue to exist under the Eleventh Amendment in state and federal courts. To do otherwise, the court reasoned, would create an anomalous situation where the Eleventh Amendment provided protection in one jurisdiction but not in the other, thus demoting the Eleventh Amendment "into nothing more than a choice of forum clause." *Morris*, 565 N.E.2d at 426. The court further voiced concern over a state's being hauled into its own courts as a party by the laws of another sovereign. *Id.* The Court, accordingly, held that the Maritime Academy was protected against suit in state court, absent consent.

There is one point which we find persuasive when considering the *Morris* decision. The decision was premised on the fact that the U.S. Supreme Court had never addressed the precise issue of state immunity in state courts for a federal claim when federal jurisdiction was no longer available. But following the *Morris* decision, the Court did appear to reach the issue in *Hilton v. South Carolina Public Railways Comm'n, supra,* as previously discussed, with its citation to *Howlett v. Rose, supra.* Without consideration of the *Hilton* and *Howlett* decisions, we consider the *Morris* decision as well as the other earlier state court cases to be of little utility in deciding this issue.

We are also aware that some ambiguous language in the *Seminole Tribe* opinion concerning "unconsenting states" has been seized upon as support for the proposition that state consent is a prerequisite to state liability in its own courts for violation of a federal right. Carlos Manual Vazquez, *What Is Eleventh Amendment Immunity?* 106 YALE L.J. 1683, 1717 (1997), *citing Seminole Tribe*, 517 U.S. at 72. There is, too, one-sentence *dictum* in *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30 (1994), that the Eleventh Amendment shields states from suit in federal court "leaving parties with claims against a State to present them, *if the State permits*, in the State's own tribunals." *Hess*, 513 U.S. at 39 (emphasis added). This line of reasoning in favor of state sovereign immunity has its genesis in *Hans v. Louisiana, supra,* and the Court's allusion in that 1890 opinion to the principle that a sovereign cannot be sued in its own courts without its consent or permission. *Hans*, 134 U.S. at 17. We view such passing references, and even the language in *Hans*, as inconsequential when con-

fronted with the full analysis of *Hilton v. South Carolina Public Railways Comm'n, supra*, bolstered by *Howlett v. Rose, supra*, where the issue of the Supremacy Clause was met head-on.

In sum, we have no doubt that the weight of authority favors the employees in this matter. The FLSA now remains to be enforced against state employers only in state courts and is viable only by virtue of the Supremacy Clause. Despite our conclusion, we do not view our decision today as supporting the concept that Congress has unbridled authority under the Commerce Clause to require state courts to enforce federal rights against a state government. But with the history of the FLSA and with the Court's clear message that the Eleventh Amendment is not pertinent to state immunity in state courts, we can only conclude that the FLSA remains alive and well and that state-court enforcement against its own sovereign has not been foreclosed.

The decision of the circuit court is reversed and this cause is remanded for further proceedings.

Reversed and remanded.