1998 ME 200

**John H. ALDEN et al.**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued Feb. 3, 1998.

Decided Aug. 4, 1998.

Donald F. Fontaine (orally) Lynne A. Gardner, Fontaine & Beal, P.A., Portland, Timothy L. Belcher, Maine State Employees Ass'n, Augusta, Larry Engelstein, Kathy Krieger, Office of the General Counsel, A.F.L.-C.I.O., Washington, DC, for plaintiffs.

Andrew Ketterer, Attorney General, Peter J. Brann, Asst. Atty. Gen. (orally), Augusta, for defendants.

Robert M. Loeb (orally), Civil Division, Appellate Staff, U.S. Dept. of Justice; Ellen L. Beard, Office of the Solicitor, U.S. Department of Labor, Washington, DC, for amicus curiae.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

ROBERTS, Justice.

[¶ 1] John H. Alden[1] appeals from the judgment of the Superior Court (Cumberland County, *Calkins, J.*) dismissing on the basis of sovereign immunity his complaint brought pursuant to the federal Fair Labor Standards Act. Alden contends that the doctrine of sovereign immunity may not be interposed to defend against this federally created cause of action. We affirm the judgment.

[¶ 2] In December 1992 Alden, a state probation officer, filed a complaint against the State in federal district court seeking overtime pay pursuant to the Fair Labor Standards Act (FLSA). While that claim was pending, the Supreme Court of the United States decided *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), which held, on the basis of the Eleventh Amendment to the United States Constitution, that Congress may not authorize pursuant to its Article I powers suits in federal court by private parties against unconsenting states. *Id.* at 72–73, 116 S.Ct. 1114. Relying on *Seminole Tribe*, the federal district court dismissed Alden's claim for lack of subject matter jurisdiction. *Mills v. State*, 1996 WL 400510 (D.Me. July 3, 1996), *aff'd*, 118 F.3d 37 (1st Cir.1997).

[¶ 3] Alden then filed essentially the same complaint in the Superior Court in August 1996. The State moved for a judgment on the pleadings pursuant to M.R. Civ. P. 12(c), stating as grounds the doctrine of state sovereign immunity and the statute of limitations. Although the court found that Alden's claim was not barred by the statute of limitations, it granted the State's motion on the ground of sovereign immunity. Alden's appeal followed.

[¶ 4] The principal issue before us is whether state sovereign immunity, as reflected in the Eleventh Amendment, protects the State from this federally created cause of action in its own courts. Alden contends that Congress has abrogated the State's sovereign immunity by enacting the FLSA. We disagree. Although Congress may have intended to subject the states to the overtime provisions of the FLSA, it does not have the

---

1. Alden is joined by 66 additional plaintiffs, all present or former state probation officers. For clarity, and because the central issue on appeal is identical for all plaintiffs, we refer only to Alden.

necessary power, pursuant to the Constitution, to accomplish this end.

[¶ 5] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. "Although the text of the Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts, 'we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition ... which it confirms.'" *Seminole Tribe,* 517 U.S. at 54, 116 S.Ct. 1114 (quoting *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 779, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991)). That presupposition consists of two elements: "that each State is a sovereign entity in our federal system ... and ... that '[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" *Id.* (quoting The Federalist No. 81, at 487 (Alexander Hamilton)) (Clinton Rositer ed. (1961)) (citations omitted).

[¶ 6] We have concluded on several occasions that sovereign immunity does protect the State from suit by private parties in its own courts without its consent, even when the cause of action derives from federal law. In *Drake v. Smith,* 390 A.2d 541 (Me.1978), we considered the question whether the State's enactment of a statutory scheme whereby it became a partner with the federal government in paying medical care costs of certain recipients of federal aid constituted a waiver of state sovereign immunity. We held that because the State had not waived its Eleventh Amendment immunity from suit in federal court, it was not reasonable to conclude that it had waived its sovereign immunity to the same suit in state court. *Id.* at 546.

[¶ 7] In *Thiboutot v. State,* 405 A.2d 230 (Me.1979), *aff'd on other grounds,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), we addressed the amenability of the State to suits by private parties for retroactive AFDC benefits pursuant to 42 U.S.C. § 1983. We held that "in the absence of waiver by the state of its sovereign immunity, the state may constitutionally interpose that immunity as a bar to a class action brought in a state court under ... § 1983." *Id.* at 237. Similarly, in *Jackson v. State,* 544 A.2d 291 (Me.1988) *cert. denied,* 491 U.S. 904, 109 S.Ct. 3185, 105 L.Ed.2d 694 (1989), addressing the State's amenability to suit under the federal Rehabilitation Act, 29 U.S.C. § 794, we held that "the State may constitutionally interpose its sovereign immunity in state court as a bar to an award of damages under ... the Rehabilitation Act." *Id.* at 298. Most recently, *Moody v. Commissioner, Dept. of Human Servs.,* 661 A.2d 156 (Me.1995), concerned the AFDC program and a violation by the Department of Human Services of the due process rights of the plaintiffs. In reaching the conclusion that the State is protected by sovereign immunity from suit in its own courts, we stated: "The Eleventh Amendment to the United States Constitution precludes the federal courts from circumventing the sovereign immunity of the states. Although the Eleventh Amendment is not directly applicable to state courts, the doctrine of sovereign immunity similarly protects the states from actions [in] state courts." *Id.* at 158 n. 3 (citation omitted).

[¶ 8] Reading these decisions in combination, it is clear that we have looked to the Eleventh Amendment to define the contours of state sovereign immunity. If Congress cannot force the states to defend in federal court against claims by private individuals, it similarly cannot force the states to defend in their own courts against these same claims. In reaching this conclusion, we have found that the Eleventh Amendment and state sovereign immunity are analogous, to the extent that both protect the State from being forced by an act of Congress to defend against a federal cause of action brought by a private individual. To hold otherwise, by concluding that a state, immune from suit in federal court, must defend against that same suit in its own courts, would effectively vitiate the Eleventh Amendment.

[¶ 9] The Supreme Court's opinion in *Seminole Tribe* reinforces this position. The Court began its analysis with the general proposition that in order to abrogate a state's

sovereign immunity Congress must have "'unequivocally express[ed] its intent to abrogate the immunity,'" and must have done so "'pursuant to a valid exercise of power.'" *Seminole Tribe*, 517 U.S. at 55, 116 S.Ct. 1114 (quoting *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)). Addressing the first element, the Court concluded that it is "indubitable that Congress intended through the [FLSA] to abrogate the States' sovereign immunity from suit." *Id.* at 57, 116 S.Ct. 1114.

[¶ 10] The Court then addressed the second element, namely, whether Congress has the power to abrogate sovereign immunity in this manner. Concluding that the Eleventh Amendment deprives Congress of this power, the Court stated that the Amendment "serves to avoid 'the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" *Id.* at 58, 116 S.Ct. 1114 (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993)). To suggest, as Alden has done, that this indignity would be lessened by simply dragging the State into a different forum misconstrues the underlying premise of the Eleventh Amendment.

[¶ 11] The Eleventh Amendment does not explicitly protect the states from suit in their own courts. *Hilton v. South Carolina Pub. Rys. Comm'n*, 502 U.S. 197, 204–05, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991). That does not, however, end the inquiry. In reaching its conclusion in *Seminole Tribe*, the Court spoke of the Amendment as reflecting a more fundamental principle of state sovereign immunity: "For over a century, we have grounded our decisions in the oft-repeated understanding of state sovereign immunity as an essential part of the Eleventh Amendment." *Seminole Tribe*, 517 U.S. at 66, 116 S.Ct. 1114. The Court stated:

> Behind the words of the constitutional provisions are postulates which limit and control.... There is ... the postulate that States of the Union, still possessing attributes of sovereignty, shall be immune from suits, without their consent, save where there has been a surrender of this immunity in the plan of the convention.

*Id.* at 68, 116 S.Ct. 1114 (quoting *Principality of Monaco v. Mississippi*, 292 U.S. 313, 323, 54 S.Ct. 745, 78 L.Ed. 1282 (1934) (internal quotation and citation omitted)). The postulate at work here, state sovereign immunity, is a "background principle" that is "embodied in the Eleventh Amendment." *Id.* at 72, 116 S.Ct. 1114. Thus the Eleventh Amendment does not delimit the scope and effect of state sovereign immunity. Rather, it reflects but one aspect of the states' inherent, more sweeping immunity from suits brought by private parties. A power so basic and profound would be an odd power indeed if it protected the states from suit in the federal courts but provided no comparable protection in their own courts. If Congress does not have the power to abrogate state sovereign immunity with respect to federal causes of action brought in federal courts, as the *Seminole Tribe* case clearly held, then that limitation on congressional power may not be circumvented simply by moving to a state court. Accordingly, we conclude that sovereign immunity protects the State from defending this federal cause of action in its own courts.

[¶ 12] Alden contends, in the alternative, that the State has waived its sovereign immunity by implication, having enacted several statues whereby the State has made itself amenable to suit in the area of state employee wage claims. Conspicuously absent from Alden's list of statutes affecting the wages and employment rights of state employees is 26 M.R.S.A. § 664(3) (Supp.1997), which is the only statutory provision directly relevant to the central issue on appeal—the State's amenability to suit by state employees for overtime pay. That section provides, "The overtime provision of this section does not apply to [p]ublic employees," *id.*, who are defined as "any person[s] whose wages are paid by ... the State." *Id.* § 663(10) (1988).

[¶ 13] We have stated that in the absence of a specific statutory waiver of immunity, "a legislative waiver of the sovereign's immunity from suit may be found implicit in a general scheme plainly contemplating that the State will become party to particular kinds of contracts." *Drake*, 390 A.2d at 545. In the present instance, however, it is impossible to

find an implied waiver in a larger statutory scheme when the Legislature has spoken explicitly on the point. Any implications of these statutory provisions are limited by the Legislature's unambiguous statement that the State is not subject to the overtime requirement.

The entry is:

Judgment affirmed.

DANA and RUDMAN, JJ., dissent.

DANA, Justice, with whom RUDMAN, Justice, joins, dissenting.

[¶ 14] I must respectfully dissent. Contrary to the Court's conclusion, the Eleventh Amendment does not define the scope of state sovereign immunity. Although the Supreme Court's decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), precludes Alden from prosecuting this action in federal court, neither *Seminole Tribe* nor the Supremacy Clause permits the State to interpose its sovereign immunity as a defense to a suit alleging a violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 (1965, 1978 & Supp.1998), that is maintained in state court.

[¶ 15] Pursuant to the FLSA, an employee may bring an action alleging violations of, *inter alia*, the minimum wage and maximum hours provisions of the act, "against any employer (including a public agency) in any Federal or State court of competent jurisdiction...." *Id.* § 216(b) (Supp.1998). This provision clearly expresses a congressional intent to abrogate the states' immunity from suit. The Court concludes that Congress lacks the authority to abrogate the states' immunity from FLSA actions prosecuted in state courts by relying on *Seminole Tribe*, a reliance that is misplaced.

[¶ 16] In *Seminole Tribe*, the Supreme Court determined that the Indian Commerce Clause does not grant Congress the authority to abrogate the states' Eleventh Amendment immunity. *See* 517 U.S. at 47, 116 S.Ct. 1114. Prior to the *Seminole Tribe* decision, the Supreme Court had found only two constitutional provisions that provided Congress with the authority to abrogate

Eleventh Amendment immunity: the Fourteenth Amendment, *see Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); and the Interstate Commerce Clause, *see Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989). *See Seminole Tribe*, 517 U.S. at 59, 116 S.Ct. 1114. The Court agreed with the Seminole Tribe's contention that " '[t]here is no principled basis for finding that congressional power under the Indian Commerce Clause is less than that conferred by the Interstate Commerce Clause,' " *id.* at 60–62, 116 S.Ct. 1114, but it overruled the holding of *Union Gas* that the Interstate Commerce Clause grants Congress the power to abrogate Eleventh Amendment immunity, *see id.* at 66, 116 S.Ct. 1114. The Court reasoned that the holding of *Union Gas* "deviated sharply" from the well-established constitutional principle that the Eleventh Amendment "limited the federal courts' jurisdiction under Article III," and it rejected the conclusion of the *Union Gas* plurality "that Congress could under Article I expand the scope of the federal courts' jurisdiction under Article III." *Id.* at 63, 116 S.Ct. 1114. The Court emphasized that "Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." *Id.* at 73, 116 S.Ct. 1114.

[¶ 17] In *Seminole Tribe*, therefore, the Court determined that Congress had exceeded its Article I powers by seeking to expand the jurisdiction of Article III courts beyond the limits imposed by the Eleventh Amendment. That decision provides little guidance as to the proper resolution of this case: state courts are not Article III courts, and "the Eleventh Amendment does not apply in state courts," *Hilton v. South Carolina Pub. Ry. Comm'n*, 502 U.S. 197, 205, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991). *See also Bunch v. Robinson*, 122 Md.App. 437, 712 A.2d 585 (Md.Ct.Spec.App. 1998) ("The Eleventh Amendment addresses the susceptibility of a state to suit in federal court, not the general immunity of a state from private suit."). In contrast, the analytical framework set forth in *Hilton v. South Carolina Public Railways Commission*, 502 U.S. 197, 112 S.Ct. 560, 116

L.Ed.2d 560 (1991), sheds considerable light on our inquiry.

[¶ 18] In *Hilton,* the Court considered whether the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60 (1986), permits a cause of action against state-owned railroads in state courts. *See* 502 U.S. at 199, 116 L.Ed.2d 560. The Court had held in 1964 that FELA authorizes damages suits against state-owned railroads, and that states waive their Eleventh Amendment immunity by engaging in the railway business. *See Parden v. Terminal Ry. of Alabama Docks Dep't,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). The Court reconsidered the *Parden* holding in 1987, however, and concluded that FELA, as incorporated by the Jones Act, 46 U.S.C. app. § 688 (Supp.1998), did not abrogate states' Eleventh Amendment immunity. *See Welch · v. Texas Dep't of Highways and Pub. Transp.,* 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987).

[¶ 19] Rejecting a contention that the *Welch* decision controlled its inquiry, the Court in *Hilton* concluded that FELA does authorize causes of action against the states in their courts. *See Hilton,* 502 U.S. at 203, 116 L.Ed.2d 560. The Court reasoned:

the most vital consideration of our decision today, which is that to confer immunity from state-court suit would strip all FELA and Jones Act protection from workers employed by the States, was not addressed or at all discussed in the *Welch* decision. Indeed, that omission can best be explained by the assumption ... that the Jones Act (and so too FELA) by its terms extends to the States. This coverage, and *the jurisdiction of state courts to entertain a suit free from Eleventh Amendment constraints,* is a plausible explanation for the absence in *Welch* of any discussion of the practical adverse effects of overruling that portion of *Parden* which pertained only to the Eleventh Amendment, *since continued state-court jurisdiction made those effects minimal.*

*Id.* at 203–04, 112 S.Ct. 560 (footnote omitted) (emphasis added). The Court observed

that the issue in *Hilton* "is different from the issue in our Eleventh Amendment cases in a fundamental respect: The latter cases involve the application of a rule of constitutional law, while the former case[ ] appl[ies] *an ordinary rule of statutory construction."* *Id.* at 205, 112 S.Ct. 560 (quotation omitted) (emphasis added). Although the Court's construction of FELA relied heavily upon *Parden* and *stare decisis,* it observed that the "primary focus" of a statutory construction should be "the language and history" of the statute. *Id.* at 205, 112 S.Ct. 560. The Court cautioned that although the scope of Eleventh Amendment immunity is "a relevant consideration," achieving symmetry between a state's liability in state and federal courts should not be imperative. *Id.* at 205–06, 112 S.Ct. 560. The *Hilton* decision concluded that because FELA imposes liability upon the states, "the Supremacy Clause makes that statute the law in every State, fully enforceable in state court." *Id.* at 207, 112 S.Ct. 560.

[¶ 20] The Court's decision in this case accords symmetry undue weight, is devoid of any analysis of the FLSA, and does not address the Supremacy Clause. A different, and in my opinion better, approach is illustrated by the recent decision of the Arkansas Supreme Court in *Jacoby v. Arkansas Department of Education,* 331 Ark. 508, 962 S.W.2d 773 (1998). In *Jacoby,* the court concluded that neither the Eleventh Amendment nor the sovereign immunity provision of the Arkansas Constitution [2] prevents state employees from maintaining an FLSA cause of action against the state in state court. *See id.* at 775–78; *see also Ribitzki v. School Bd. of Highlands County,* 710 So.2d 226 (Fla. Dist.Ct.App.1998) (holding that the Eleventh Amendment does not immunize the state from an FLSA action in state court); *Bunch,* 122 Md.App. 437, 712 A.2d 585, (holding that the Supremacy Clause requires state courts to enforce the FLSA against the states and that the scope of states' sovereign immunity from suit in their own courts is not coterminous with their Eleventh Amendment immu-

---

**2.** Pursuant to Article 5, section 20 of the Arkansas Constitution, "[t]he State of Arkansas shall never be made a defendant in any of her courts."

nity). The *Jacoby* court determined that the *Seminole Tribe* decision was not conclusive "of state liability in its own courts." 962 S.W.2d at 777. The court reasoned that pursuant to the Supremacy Clause, the FLSA must be treated as much the law of Arkansas as laws passed by the Arkansas legislature. *See id.* at 775. The court observed that "state employees . . . are clearly entitled to file FLSA claims against state agencies as employers"; that "the FLSA expressly provides that state courts have jurisdiction over these claims"; and that the FLSA is "the law throughout the land, and state sovereign immunity cannot impede it." *Id.* at 777.

[¶ 21] The Supreme Court has decided that Congress acted within its Article I powers and did not violate the Tenth Amendment when it provided state employees with the protections afforded by the FLSA. *See Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 555–56, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), *reh'g denied,* 471 U.S. 1049, 105 S.Ct. 2041, 85 L.Ed.2d 340 (1985).[3] Pursuant to the Supremacy Clause, "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the contrary notwithstanding." U.S. Const. art. 6. As the Supreme Court explained in *Howlett v. Rose,*

> [f]ederal law is enforceable in state courts . . . because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature. The Supremacy Clause makes those laws 'the supreme Law of the Land,' and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure.

496 U.S. 356, 367, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). "[W]hen Congress acts within its enumerated powers to create a federal cause of action that imposes liability on the states, state courts of general jurisdiction may not refuse to hear the federal claim." *Bunch,* 122 Md.App. at 446–47, 712 A.2d 585. To the extent that Maine's common law doctrine of sovereign immunity conflicts with the provisions of the FLSA which subject the State to liability in state court, the Supremacy Clause resolves that conflict in favor of the FLSA. *Cf. Howlett,* 496 U.S. at 377–78, 110 L.Ed.2d 332 (rejecting interpretation of Florida's sovereign immunity statute that rendered all state subdivisions immune from section 1983 actions maintained in Florida courts and concluding, "[t]o the extent that the Florida law of sovereign immunity reflects a substantive disagreement with the extent to which governmental entities should be held liable for their constitutional violations, that disagreement cannot override the dictates of federal law.").

[¶ 22] A determination that the Supremacy Clause requires states to defend FLSA causes of action that are prosecuted in state courts, contrary to the Court's concern, would not "vitiate the Eleventh Amendment." Such a determination would not strip the State of its sovereign immunity whenever a litigant sought to prosecute a federally-created cause of action against it. The FLSA's express authorization of suits against state employers in state courts constitutes an explicit statement of congressional intent to abrogate the states' immunity from suit in their own courts. If a statute creating a federal cause of action does not contain an express statement of congressional intent to abrogate states' immunity, then a state could successfully interpose its sovereign immunity as a defense to that cause of action.[4] *See*

---

3. In *Garcia,* the Court observed that federal supervision over "the judicial action of the States is . . . permissible . . . as to matters by the Constitution specifically authorized or delegated to the United States." 469 U.S. at 549, 105 S.Ct. 1005 (quotation and citation omitted). The Court reasoned: "we perceive nothing in the overtime and minimum-wage requirements of the FLSA . . . that is destructive of state sovereignty or violative of any constitutional provision." *Id.* at 554, 105 S.Ct. 1005.

4. Similarly, the Maine Legislature may waive the State's sovereign immunity only by enacting "a general law plainly conferring the State's consent to be sued as to a class of cases," or by dealing "specifically with a particular action sought to be brought against the State and giv[ing] its plainly stated consent that the State be sued in that action." *Drake v. Smith,* 390 A.2d 541, 544 (Me.1978). Thus, the ability of Congress, when enacting valid legislation, to abrogate the State of Maine's immunity from suit in

*Hilton,* 502 U.S. at 206, 112 S.Ct. 560 ("When the issue to be resolved is one of statutory construction, of congressional intent to impose monetary liability on the States, the requirement of a clear statement by Congress to impose such liability creates a rule that ought to be of assistance to the Congress and the courts in drafting and interpreting legislation.").

[¶ 23]   I would vacate the judgment of the Superior Court.

its own courts parallels the Maine Legislature's ability to waive the State's sovereign immunity.