STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-08-155

JANE B. OLFENE and
GREGORY D. REED,

Plaintiffs

v.

THE BOARD OF TRUSTEES, MAINE
PUBLIC EMPLOYEES RETIREMENT
SYSTEM,

and

GAIL DRAKE WRIGHT

Defendants

DECISION AND ORDER

DONALD L. GARBRECHT
LAW LIBRARY

FEB 1 3 2009

Before the court are two motions. On May 5, 2008, plaintiffs filed a motion for preliminary injunction pursuant to M.R. Civ. P. 65(b), seeking to compel the Board of Trustees, Maine Public Employees Retirement System (System) and Gail Wright, Executive Director of the System, to cease intercepting plaintiffs' retirement benefit payments. Thereafter, the System filed a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6).

## FACTS

Plaintiffs Jane Olfene and Gregory Reed are former Maine public school teachers. (Compl. ¶¶ 1-2.) Both are approaching age 60, and have retired under early retirement provisions of the System.

### I. Plaintiff Olfene

Plaintiff Olfene retired from teaching on July 1, 2006, after 35 years of teaching in Portland public schools. (Compl. ¶ 5.) Upon completing her tenure as a teacher,

plaintiff Olfene applied to the System for retirement benefits and the System approved her application. (Compl. ¶ 7.) Plaintiff Olfene began received monthly benefits[1] on July 1, 2006, and continued to receive benefits for nearly two years. (Compl. ¶ 7.) On or about March 29, 2008, the Executive Director of the System terminated plaintiff Olfene's monthly benefits. (Compl. ¶ 9.) Plaintiff Olfene was informed this action was taken because she was in violation of a System rule by acting as a substitute teacher for more than sixty days in the academic year 2006-2007. (Compl. ¶ 11.) According to the Executive Director, in order to compensate for the allegedly improper benefit payments, plaintiff Olfene's benefits will continue to be seized by the System until the end of 2008.[2] (Comp. ¶¶ 12-13.)

II. Plaintiff Reed

Plaintiff Reed retired from teaching on July 1, 2007. (Compl. ¶ 14.) Upon completing his tenure as a teacher, plaintiff Reed applied to the System for retirement benefits and the System approved his application. (Compl. ¶ 15.) Plaintiff Reed began receiving benefits on July 1, 2007. (Compl. ¶ 16.) On or about January 1, 2008, the Executive Director of the System terminated plaintiff Reeds monthly benefits. (Compl. ¶ 18.) Plaintiff Reed was informed this action was taken because he had returned to work as a part time teacher for a community college within thirty days of retirement, and thus the System did not consider him to be retired. (Compl. ¶ 20.) The Executive Director claims that $17,715.33 in retirement benefits paid to plaintiff Reed must be repaid, and is recoping this amount from his monthly benefits. (Compl. ¶¶ 16, 18.)

---

[1] Until her benefits began being seized by the System, plaintiff Olfene's monthly retirement benefits were $2,437.00. (Compl. ¶ 7.)
[2] The total claimed repayment is $22,035.27, plus interest. (Compl. ¶ 9.)

Following the System's actions, plaintiffs Olfene and Reed filed a class action complaint alleging a due process violation pursuant to 42 U.S.C. § 1983,[3] for the System's failure to provide hearings prior to the termination of their retirement benefits and recoupment of allegedly overpaid benefits. (Compl. ¶¶ 22-29.) Pursuant to 14 M.R.S. § 5951, the plaintiffs' sought a declaratory judgment that the System's hearing process violates plaintiffs' due process rights. (Compl. ¶ 30-31.) Subsequently, the plaintiffs filed a motion for preliminary injunction to compel the System to cease intercepting plaintiffs' retirement benefit payments until the System provides the plaintiffs with a due process hearing. The System thereafter filed a motion to dismiss.

## DISCUSSION

### I. Motion to Dismiss

A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *Plimpton v. Gerrard*, 668 A.2d 882, 885 (Me. 1995). When reviewing a motion to dismiss, the material allegations of the complaint are accepted as true. *Id.* In ruling on a motion to dismiss, the court should "consider the material allegations of the complaint as admitted and review the complaint in the light most favorable to the plaintiffs to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiffs to relief pursuant to some legal theory." *Bussell v. City of Portland*, 1999 ME 103, ¶ 1, 731 A.2d 862. Dismissal for failure to state a claim is appropriate only where it appears beyond doubt that the plaintiffs are entitled to no

---

[3] Section 1983 reads in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The court has jurisdiction to entertain a claim under section 1983. *Thiboutot v. State*, 405 A.2d 230, 235 (Me. 1979), *aff'd*, 448 U.S. 1 (1980).

relief under any set of facts that might be proven prove in support of their claims. *Dutil v. Burns*, 674 A.2d 910, 911 (Me. 1996). The legal sufficiency of a complaint is a question of law. *Sargent v. Buckley*, 1997 ME 159, ¶ 10, 697 A.2d 1272, 1275.

The System argues that the plaintiffs' lawsuit should be dismissed because: 1) the doctrine of primary jurisdiction requires the administrative process to continue; 2) plaintiffs have failed to exhaust their administrative remedies; 3) the System, as a state agency, is immune; 4) the System is not a "person" within the meaning of 42 U.S.C. § 1983; 5) defendant Wright has personal immunity for her actions; and 6) plaintiffs fail to state a claim upon which relief may be granted. (Def.'s Mem. at 2.)

At the outset, the System's arguments that plaintiffs' claims are barred by the doctrines of primary jurisdiction and exhaustion of administrative remedies are misplaced. *See State ex rel. Brennan v. R.D. Realty Corp.*, 349 A.2d 201, 206 (Me. 1975) (explaining that, although the concepts are somewhat different, that doctrines of "'[p]rimary jurisdiction' and 'exhaustion of administrative remedies' are both closely allied in basic function and concept"). Plaintiffs are not attempting to place before the court the question of whether the System should, or should not, recoup the alleged overpayments from plaintiffs' retirement benefits. Rather, plaintiffs seek to compel the System to provide a hearing before any recoupment is made. Such a request is based upon constitutional due process grounds, which is properly a question for the court. Neither the doctrine of primary jurisdiction nor the doctrine of exhaustion precludes this claim. *See Burns v. Town of Lamoine*, 43 F. Supp. 2d 63, 69 (D. Me. 1999) ("It is well-settled, however, that with only limited exceptions, none of which apply in this case, a plaintiff is not required to exhaust state administrative remedies as a prerequisite to bringing a Section 1983 action.").

Similarly unavailing is the System's argument that the plaintiffs' have failed to show that the System's administrative procedures caused an actionable injury under section 1983. The System, citing a line of cases, including *Parratt v. Taylor*, 451 U.S. 527 (1981), argues that, "[w]here administrative processes provide an opportunity for full relief, no due process violation may be rightly asserted under section 1983. (Defs. Mem. at 9.). The System contends that plaintiffs must avail themselves of state administrative remedies before bringing a section 1983 claim, or show those remedies are inadequate. The System's argument fails to consider that the *Parratt* Court recognized

> an important difference between a challenge to an established state procedure as lacking in due process—see, e.g., *Fuentes v. Shevin*, 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972) (invalidating Florida garnishment procedure requiring a hearing only after the repossession)—and a property damage claim arising out of the alleged misconduct of state officers.

*Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983). While the latter case requires closer scrutiny of a section 1983 claim because state law provides the plaintiff a means of relief, where, as here, the challenge is that the "established state procedure" itself is constitutionally infirm, the *Parratt* scrutiny suggested by the System does not apply. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982). The System's cited case law is thus inapposite.

The System also argues that sovereign immunity requires dismissal of plaintiffs' claims. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although the Eleventh Amendment is not directly applicable to state courts, the doctrine of sovereign immunity similarly protects the states from actions [in] state courts." *Moody v. Commissioner, Dept. of Human*

*Servs.*, 661 A.2d 156, 158 n.3 (Me. 1995); *Alden v. State*, 1998 ME 200, ¶¶ 7-11, 715 A.2d 172, 174-75, *aff'd*, 527 U.S. 706 (1999). The general principle of sovereign immunity is that a state or one of its agencies or departments cannot be sued unless the state consents by legislative enactment. *See Drake v. Smith*, 390 A.2d 541, 543 (Me. 1978). Plaintiffs do not contend that the state has consented to this suit, and this court has found no indication of a legislative waiver of immunity. Instead, the issue here is whether the System is an "arm of the State." *See Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth.*, 991 F.2d 935, 939 (1st Cir. 1993) ("[o]nly the state itself and 'arms' of the state receive immunity").[4]

The Law Court has not specifically determined whether the System is an arm of the state for sovereign immunity purposes.[5] Although the Eleventh Amendment does not delimit the scope and effect of state sovereign immunity, the Law Court has "looked to the Eleventh Amendment to define the contours of state sovereign immunity." *Alden*, 1998 ME 200, ¶ 8, 11, 715 A.2d at 174-75; *see also Moody*, 661 A.2d at 159 (Lipez, J., concurring) (agreeing that the Law Court has "relied in the past on federal Eleventh Amendment sovereign immunity jurisprudence to develop our own doctrine of sovereign immunity"). To determine whether an entity enjoys Eleventh Amendment immunity, courts look to its nature as created by state law. *See Rounds v.*

---

[4] Plaintiffs' take contradictory positions regarding whether the System is an arm of the state. (*Compare* Pl.'s Opp'n Mem. at 2-3 (arguing System does not have sovereign immunity because it is not an arm of the state) *with* Pl.'s Mem. at 7 (arguing that plaintiffs are without adequate remedy at law because defendants enjoy sovereign immunity, discretionary immunity, or fail to qualify as a "person" within the meaning of 42 U.S.C. § 1983)).

[5] Plaintiffs cite to an unreported Order of Judgment entered on 9/25/96, issued after the decision in *Parker v. Wakelin*, 937 F. Supp. 46 (D. Me. 1996), for support that the System is not the alter ego of the state. Although the *Parker* court noted that the issue was raised at the last minute and without significant briefing, the court found that the System was "an independent, autonomous organization," and "was not the alter ego of the state." Specifically, the court found that nothing in the statute indicated that the state itself would be responsible for a judgment against the retirement system. The First Circuit, on other grounds, overturned the *Parker* decision, upon which the judgment was issued. *See Parker v. Wakelin*, 123 F.3d 1, 9 (1st Cir. 1997). Although the *Parker* judgment is not to be disregarded, its precedential value is diminished, and does not warrant forgoing an independent analysis.

*Oregon State Bd. of Higher Educ.*, 166 F.3d 1032, 1035 (9th Cir. 1999). Generally, an entity enjoys sovereign immunity if the state has a legal obligation to satisfy judgments against it. *Metcalf & Eddy, Inc.*, 991 F.2d at 939. Although this is the most important factor, the First Circuit has developed an additional list factors to consider when determining if an entity is an "arm of the state." These are whether the entity: (1) performs an "essential" governmental function as opposed to nonessential or merely proprietary one; (2) exercises substantial autonomy over its internal operations; (3) enjoys meaningful access to, and control over, funds not appropriated from the State treasury; (4) possesses the status of a separate "public corporation"; (5) may sue and be sued on its own name; (6) can enter into contracts in its own name; (7) has been granted a state tax exemption on its property and (8) has been expressly debarred from incurring debts in the State's name or behalf. *Id.* at 939-40.

The System is created by 5 M.R.S. § 17101(5), which provides that "[t]he retirement system is a body corporate and politic and an incorporated public instrumentality of the State and the exercise of powers conferred by this Part are held to be the performance of essential government functions." Clearly, prong one of the *Metcalf & Eddy* test weighs in favor of granting the System immunity. Although the System has considerable autonomy in regard to its daily administrative and operational decisions, including the ability to enter contracts, *see* 5 M.R.S. §§ 17103-09, other factors, including the grant of a tax exemption, *id.* at § 17053, weigh against this finding. Most importantly, the State is responsible for transferring funds necessary to "maintain the retirement system on an actuarially sound basis." *Id.* at § 17153(1-A). The System receives a significant amount of money from the State, and the State is ultimately responsible for ensuring the System is properly funded. Monetary liability from a judgment against the System could have a direct impact on the state treasury. In sum,

because the *Metcalf & Eddy* factors indicate that the System is closely intertwined with the State government, sovereign immunity applies.

Plaintiffs seek to avoid sovereign immunity by arguing that they are not seeking compensatory damages that would directly impact the state treasury. (Pls. Opp'n at 3.) Sovereign immunity, however, is not confined to actions seeking damages. *See Liberty Mut. Ins. Co. v. Bureau of Labor Standards*, 614 A.2d 1311, 1312 (Me. 1992). In *Liberty Mutual Insurance Company*, the Law Court elaborated on instances in which sovereign immunity was applicable:

> In *Cushing v. Cohen*, 420 A.2d at 922, we found the doctrine applicable to a declaratory judgment action. In *Thiboutot v. State*, 405 A.2d 230 (Me. 1979), aff'd, 448 U.S. 1, 65 L. Ed. 2d 555, 100 S. Ct. 2502 (1980), we concluded that sovereign immunity precluded judgment against the state for retroactive welfare benefit underpayments to other members of the plaintiff's class. *Id.* at 237. Most recently, in *Wellman v. Dep't of Human Services*, 574 A.2d 879 (Me. 1990), we again held that sovereign immunity barred retroactive recovery of payments made to the state.

614 A.2d at 1312; *see also O'Neill v. Baker*, 210 F.3d 41, 47 (1st Cir. 2000) (jurisdictional bar of the Eleventh Amendment "applies regardless of the nature of the relief sought"). Moreover, sovereign immunity is not overridden by 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66-67 (1989); *Thiboutot v. State*, 405 A.2d 230, 237 (Me. 1979) (relying on *Edelman v. Jordan*, 415 U.S. 651 (1974) and *Quern v. Jordan*, 440 U.S. 332 (1979)). Thus, plaintiffs' claims against the System are barred by sovereign immunity.

Nevertheless, a narrow exception to Eleventh Amendment immunity for certain suits seeking declaratory and injunctive relief against unconstitutional actions taken by state officers in their official capacities exists, where the award sought is prospective in nature. *See Papasan v. Allain*, 478 U.S. 265, 278 (1986); *Green v. Mansour*, 474 U.S. 64, 68-69 (1985); *Dirrane v. Brookline Police Dep't*, 315 F.3d 65, 71 (1st Cir. 2002) ("Yet in the

sovereign immunity context, the Supreme Court has repeatedly said that an official who acts unconstitutionally can be enjoined even though the state is immune from damages."); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 287 (2d Cir. 2003) ("The Eleventh Amendment, however, does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law."). This exception appears to apply in the state sovereign immunity context. *See, e.g., Moody*, 661 A.2d at 158-59 (recognizing that where an award can "lead to no relief that is prospective, but only to monetary awards from the state treasury for past violations of federal law" sovereign immunity applies); *Wellman v. Dep't of Human Servs.*, 574 A.2d 879, 884 n.11 (Me. 1990) (precluding, on grounds of sovereign immunity, anything but prospective relief). The doctrine applies only against state officials sued in their official capacities, not against states or state agencies. *Larsen v. State Employees' Ret. Sys.*, 553 F. Supp. 2d 403, 412 (M.D. Pa. 2008).

The United States Supreme Court has recognized that the difference between retrospective and prospective relief "will not in many instances be that between day and night." *Edelman*, 415 U.S. at 667. The pivotal question is whether the relief "serves directly to bring an end to a present violation of federal law," by governing an officer's future conduct. *Whalen v. Mass. Trial Court*, 397 F.3d 19, 29 (1st Cir. 2005). If so, relief is not barred "even though accompanied by a substantial ancillary effect on the state treasury." *Papasan*, 478 U.S. at 278. However, relief that is "tantamount to an award of damages for a past violation of . . . law, even though styled as something else," is barred by sovereign immunity. *Id.*

In this case, plaintiffs' complaint seeks declaratory and injunctive relief based upon a due process violation. Specifically, plaintiffs seek an order requiring the System and Executive Director Wright to "reinstate the retirement benefits of the plaintiffs" that

were taken without a hearing and "to refrain from doing so again until further order of this Court." (M. Prelim. Inj. at 1.) This court is persuaded that, despite any ancillary affect on the state treasury, an order requiring Executive Director Wright to reinstate plaintiffs' benefits and restraining Wright from recouping alleged benefit overpayments until a due process hearing is provided would constitute prospective, injunctive relief. Indeed, "reinstatement [of retirement benefits] pending a hearing . . . 'serves directly to bring an end to a present violation of federal law.'" *Whalen*, 397 F.3d at 30. Accordingly, plaintiffs' claim for injunctive relief against Executive Director Wright in her official capacity is not barred by sovereign immunity.[6]

The System also argues that plaintiffs' claim must fail because the System is not a "person" subject to suit under 42 U.S.C. § 1983. (Defs. Mem. at 6.) Generally, neither a state, state agency, nor state official sued in an official capacity is a "person" subject to suit pursuant to section 1983. *See Winston v. Maine Technical College Sys.*, 631 A.2d 70, 75 (Me. 1993) (citing *Will*, 491 U.S. 58). The System's argument, while accurate,[7] merely provides another rationale, in addition to sovereign immunity, for dismissing the

---

[6] Defendant Wright is clearly shielded by immunity from personal liability for damages. *See* 14 M.R.S. § 8111(1); *see also Winston v. Maine Technical College Sys.*, 631 A.2d 70, 76 (Me. 1993); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (Generally, government officials performing discretionary functions have qualified immunity "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with rights they are alleged to have violated"); *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

[7] The System is even more clearly an alter ego of the State for section 1983 purposes, which is a similar but distinct and independent question from that applied in the sovereign immunity context. *See Campaign for Sensible Transp. v. Maine Tpk. Auth.*, 658 A.2d 213, 217 n.6 (Me. 1995). A two-part test is applied: (1) is the agency an alter ego of the State or is it relatively autonomous, and (2) would funds to pay a judgment against the agency come from the state treasury. *Id.* at 216-17. 5 M.R.S. § 17101(5), the statute creating the System, is similar to the statute *Winston*, where the Law Court found the defendant-agencies were alter egos of the state. 631 A.2d at 75-76. Although the System has considerable autonomy in regard to its daily administrative and operational decisions, the System was created by statute for public purposes and performs "essential government functions" in carrying out its statutory mandate. *See Campaign for Sensible Transp.*, 658 A.2d at 216 n.5 (noting similar factor weighed in favor of finding agency to be a state entity). Moreover, the System's board members are appointed by the Governor and are subject to review and confirmation by the Legislature. 5 M.R.S. § 17102(1); *id.* These factors indicate that the State would be a real party in interest. *Winston*, 631 A.2d at 76.

plaintiffs' claims against the System. However, a state official in his or her official capacity, when sued for injunctive relief, is a "person" under section 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n.10. This distinction is similar to that recognized in the sovereign immunity doctrine. *Id.* Because the plaintiffs, as previously discussed, are seeking prospective relief against Executive Director Wright, their section 1983 claims survive dismissal.

To summarize, all plaintiffs' claims against the System are dismissed. However, because in this case, on its face, plaintiffs' complaint requests only injunctive and declaratory relief, and not damages, against Executive Director Wright, a state official acting in her official capacity, neither sovereign immunity nor section 1983 bars the plaintiffs' claims. While simply asking for injunctive relief and not damages does not clear the path for suit, the substance of the injunctive relief sought by the plaintiffs is prospective in nature. *See, e.g., Papasan*, 478 U.S. at 279. Thus, the claims against Executive Director Wright, in her official capacity, seeking injunctive and declaratory relief survive the System's motion to dismiss.

Finally, the System argues that the plaintiffs' procedural due process rights have not been violated, and thus no section 1983 claim may lie. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) (noting that section 1983 is not an independent source of substantive rights, but a means to vindicate federal rights conferred elsewhere). The heart of plaintiffs' complaint is that the System's failure to provide "any manner of hearing" prior to the interception of plaintiffs' retirement benefits denies them due process. (*See* Compl. ¶¶ 25-29.) Whether an individual's due process rights have been violated requires a balancing of three factors. *See Balian v. Bd. of Licensure in Med.*, 1999 ME 8, ¶ 10, 722 A.2d 364, 367 (applying the three factors articulated in *Mathews v. Eldridge*, 424

U.S. 319, 335 (1976)). Because of the heavily fact-based nature of this analysis, it is premature for the court to strike this balance on a motion to dismiss. *See, e.g., Caulder v. Durham Hous. Auth.*, 433 F.2d 998, 1004 n.3 (4th Cir. 1970) (remanding where "governmental interests . . . competing with plaintiff's apparent rights have not been developed in the record"); *Linares v. Jackson*, 531 F. Supp. 2d 460, 471 ("the parties should be afforded an opportunity to develop the record so that the court can properly consider the full range of their respective interests"). Thus, the System's motion to dismiss the section 1983 claim against Executive Director Wright alleging denial of due process must be denied.

## II. Motion for Preliminary Injunction

A party seeking injunctive relief by a preliminary injunction has the burden of demonstrating to the court that four criteria are met. *Bangor Historic Track, Inc. v. Dep't of Agric.*, 2003 ME 140, ¶ 9, 837 A.2d 129, 132. The moving party must demonstrate that: (1) it will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting the injunctive relief would inflict on the other party; (3) it has a likelihood of success on the merits; and (4) the public interest will not be adversely affected by granting the injunction. *Id.; Ingraham v. Univ. of Maine*, 441 A.2d 691, 693 (Me. 1982). Failure to demonstrate that any of these criteria are met requires that injunctive relief be denied. *Bangor Historic Track, Inc.*, 2003 ME 140, ¶ 10, 837 A.2d at 132-33. Rather than evaluating each factor in isolation, all of these factors are weighed together in determining whether injunctive relief is proper in the specific circumstances of each case. *Dep't of Envtl. Prot. v. Emerson*, 563 A.2d 762, 768 (Me. 1989). Where, as here, the requested preliminary injunction had mandatory aspects, requiring the defendant to take affirmative steps, the moving party must show a clear likelihood of success on the merits, not just a reasonable likelihood. *Id.*

The "likelihood of success" prong requires an analysis of plaintiffs constitutional claim. Plaintiffs argue that they are constitutionally entitled to a pre-interception hearing, prior to the recoupment of alleged overpayments. The System provides a post-interception hearing following the Executive Director's decision to intercept benefits. *See* 5 M.R.S. § 17451 ("Any person aggrieved by a decision or ruling of the executive director may appeal the decision or ruling to the board.") According to System rules, the Executive Director's decision consists of an "Initial Decision" and a "Final Decision."[8] *See* Me. Pub. Employee Ret. Sys., 94 411 CMR 702 § 5(1). In making the Initial Decision, the Executive Director "may consider information from sources deemed appropriate," including System records, medical records, staff recommendations, employer information, and deposition transcripts. *Id.* at § 5(2). Following the Initial Decision, all "testimonial or documentary expert evidence must be submitted prior to the expiration of" a specified time period. *Id.* at § 5(3)(B). If additional evidence is submitted, the Executive Director "will review it promptly" and may request additional information. *Id.* at § 5(3)(D). The court acknowledges that it is somewhat unclear upon which decision the System began intercepting plaintiffs' retirement benefits.[9] Notwithstanding the constitutionality of recouping plaintiffs benefits prior to an Initial Decision of the Executive Director, at which point some documentation is reviewed, because, as discussed in the sovereign immunity and

---

[8] The executive director may dispense with the "Initial Decision" in certain circumstances. *See* Me. Pub. Employee Ret. Sys., 94 411 CMR 702 §§ 5(1).

[9] Regarding Plaintiff Olfene, her affidavit states that her retirement income stopped on March 28, 2008, following a March 5, 2008, "staff assessment" letter. (Olfene Aff. ¶ 9; Attach. 2.) The "staff assessment" was affirmed upon "review of Ms. Olfene's records" on March 26, 2008. (Attach. 7.) A Final Decision was issued on May 20, 2008. (Ex. A.) Thus, it appears that her retirement income began being recouped after the March 26th "review of Ms. Olfene's records"—e.g., the Initial Decision—but before the Final Decision of the Executive Director. Regarding Plaintiff Reed, his affidavit states that a December 19, 2007 letter indicating that he had violated a System rule stopped his retirement benefits "effective immediately." (Reed Aff. ¶ 10; Attach. 1.) The Initial Decision of the Executive Director, which affirmed the staff determination, was issued on May 20, 2008. (Ex. B.) As Plaintiff Reed has not waived the six-month period to submit additional information, the Final Decision has not issued yet. Thus, in plaintiff Reed's case, it appears that recoupment began *prior* to the Executive Director's Initial Decision.

section 1983 analyses, plaintiffs sole relief is a prospective injunction, only the current constitutionality of the System's actions are at issue. *See S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 509-10 (6th Cir. 2008) (relief is available only to "enjoin state officials to conform their future conduct to the requirements of federal law," not to remedy "past constitutional violations"). Accordingly, because plaintiffs' benefits are currently being recouped following an Initial Decision, in plaintiff Reed's case, and a Final Decision, in plaintiff Olfene's case, the issue presented is whether recoupment pursuant to these decisions violates the dictates of due process. This court finds that the plaintiffs have failed to carry their burden of proving a likelihood of success on the merits of this issue.

The Due Process Clauses of the Maine and Federal Constitutions[10] guarantee due process before the state deprives a citizen of a property right. *See Balian*, 1999 ME 8, ¶ 10, 722 A.2d at 367. As a threshold matter, a necessary predicate to finding a violation of procedural due process is a cognizable property interest. *See Carroll F. Look Constr. Co. v. Town of Beals*, 2002 ME 128, ¶ 11, 802 A.2d 994, 998. "Property interests are created by state law or other rules that secure benefits." *Id.* The System does not appear to dispute that plaintiffs have a property interest in their retirement benefits. Indeed, state law provides that retired teachers have a vested contractual right in their retirement benefits. *See* 5 M.R.S. § 17801 ("protections established under the provisions listed in subparagraph (1) constitute solemn contractual commitments of the State"); *see also Spiller v. State*, 627 A.2d 513, 516 (Me. 1993). Plaintiffs therefore have a protected property interest in their retirement benefits.

In determining what process is due, "before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned

---

[10] State and federal due process requirements are identical. *Bd. of Overseers of the Bar v. Lefebvre*, 1998 ME 24, ¶ 15, n.14, 707 A.2d 69, 73.

and afforded an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).[11] "What process is due will vary from case to case . . . to assure the basic fairness of each particular action according to its circumstances." *Fichter v. Bd. of Envtl. Protection*, 604 A.2d 433, 437 (Me. 1992) (quoting *Secure Env'ts, Inc. v. Town of Norridgewock*, 544 A.2d 319, 324-25 (Me. 1988)). Although there is no mechanical formula to be applied, the United States Supreme Court has set forth three factors to assess whether an individual's right to due process has been violated:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Eldridge*, 424 U.S. 319, 335 (1976); *see also Balian*, 1999 ME 8, ¶ 10, 722 A.2d at 367.

With respect to the first *Eldridge* factor, because intercepted benefits will be fully returned if plaintiffs prevail in their appeals to the System, (Milazzo Aff. ¶ 2), plaintiffs' interest is limited to avoiding a *temporary* reduction of their retirement benefits.[12] Plaintiffs' interest in the uninterrupted receipt of benefits pending a final administrative decision is significant. *See Shannon v. United States Civil Service Commission*, 444 F. Supp. 354, 362-63 (N.D. Cal. 1977), *aff'd on other grounds*, 621 F.2d 1030 (9th Cir. 1980). While retirement benefit payments are "not the last bulwark against starvation" like the welfare benefits in *Goldberg v. Kelly*, 397 U.S. 254 (1970), the loss of a substantial portion of fixed income is a serious hardship. (*See* Olfene Aff. ¶¶ 11-14; Thompson Aff. ¶¶ 4,

---

[11] Plaintiffs only appear to challenge the second branch of due process requirements, that is, the opportunity to be heard "at a meaningful time and in a meaningful manner." Plaintiffs' complaint indicates that the System informed them of the recoupment, and plaintiffs seek only a pre-deprivation hearing. (*See* Compl. ¶¶ 11, 12, 20, 21.)

[12] The length of deprivation of benefits is entitled to some weight in evaluating the plaintiffs' interest in a pre-recoupment hearing. *See Fusari v. Steinberg*, 419 U.S. 379, 389 (1975).

12, 13); *see also Shannon*, 444 F. Supp. at 362-63. In this way, the interest in retirement benefit payments can be roughly analogized to the interest in Social Security benefits. *Id.* (finding that although Social Security is a more basic social welfare program than retirement benefits under the Civil Service Retirement Act, both are "intended to replace income that is lost through retirement and provide for the needs of the retired individual"). Standing alone, however, this interest likely falls short of compelling a pre-recoupment hearing. *See Elliott v. Weinberger*, 564 F.2d 1219, 1231 (9th Cir. 1977), *aff'd in part on other grounds sub nom., Califano v. Yamasaki*, 442 U.S. 682 (1979).

The third *Eldridge* factor, the government's interest, including the fiscal and administrative burdens associated with requiring a pre-recoupment hearing, is not insignificant. The System clearly has a financial interest in immediately recouping benefits to which plaintiffs are not entitled. Moreover, while accurately predicting the extent of the increase may be impossible, it is certainly arguable that more hearings will be requested if the court orders that recoupment cannot begin until the recipient is afforded a hearing, which would increase the administrative and financial government burden. *See Eldridge*, 424 U.S. 347-48; *Shannon*, 444 F. Supp. at 364-66. Nevertheless, the "State is not without weapons to minimize these increased costs." *See Golberg*, 397 U.S. at 266 ("[m]uch of the drain on . . . resources can be reduced by developing [efficient] procedures . . . and by skillful use of personnel and facilities"). Further, *Shannon* illustrates that the government burden, in two important respects, is somewhat less than in *Goldberg* or *Eldridge*:

> First, a prior hearing in both required the government to continue making payments to individuals it had determined were no longer eligible for any benefits. In contrast, in the Civil Service recoupment context, the overpayment has already been stopped. The prior hearing simply precedes the starting date for recoupment. The government need not and does not continue overpaying ineligible claimants.

> Second, in Goldberg and Eldridge, the continued overpayments probably could not be recovered from the recipient if the termination decision was eventually sustained. The Goldberg Court stated, "the benefits paid to ineligible recipients pending decision at the hearing probably cannot be recouped, since the recipients are likely to be judgment-proof. Also, in Eldridge the Court stated that the right to recover undeserved benefits would probably not be of any practical value, apparently because of the limited resources of most recipients.

> The danger that overpayments will not be recoverable if recovery is deferred pending a hearing is minimized in the annuity recoupment context. The annuity will continue to be available for setoff in most cases and the retired annuitant's eligibility will generally continue past the completion of the hearing.

444 F. Supp. at 365-66 (citations omitted); *see also Mattern v. Mathews*, 582 F.2d 248, 257 (3rd Cir. 1978). Both distinctions articulated in *Shannon* are present here: any alleged overpayments to the plaintiffs have stopped, and, because the System has custody of the retirement contributions made by plaintiffs during their careers, there is little danger that overpayments will not be recoverable. These considerations render the governmental interest somewhat less than in *Goldberg* and *Eldridge*.

The determinative focus in this case is likely to be directed to the second *Eldridge* factor. In analyzing the risk of erroneous deprivation of the private interest caused by the System's recoupment procedure, this court considers "the procedures that were used and whether there is value to adding or substituting other procedural safeguards." *In re Guardianship of K-M*, 2005 ME 8, ¶ 23, 866 A.2d 106, 113. Stated differently, this court considers the "risk of error created by the State's chosen procedure." *In re Jason R.*, 572 A.2d 1080, 1081 (Me. 1990); *Eldridge*, 424 U.S. at 344. ("procedural due process rules are shaped by the risk of error inherent in the truthfinding process"). Under this framework, the issues to be determined at the proceeding and the existing procedures utilized to make that decision are evaluated. *See Eldridge*, 424 U.S. at 343-45.

The System's rules and statutory provisions provide the procedure governing the recoupment of overpayments made to recipients of retirement benefits. As discussed above, System rules provide that documentary and testimonial evidence "will" be considered in making the Final Decision, and "may" be considered in making the Initial Decision. *See* Me. Pub. Employee Ret. Sys., 94 411 CMR 702 § 5. Thus, while no oral hearing is available until an appeal before the board, the retiree is allowed to submit written material to be considered in these decisions by the Executive Director. Whether, constitutionally, an oral hearing rather than written submissions is required depends upon what type of evidence is necessary to make the decision in question. Due process generally does not require a pre-recoupment oral hearing where factual disputes are as well suited to resolution by documentary proof and written submissions as by oral hearings. *See Mathews*, 582 F.2d at 256. Conversely, "where credibility and veracity are at issue . . . written submissions are a wholly unsatisfactory basis for decision." *Goldberg*, 397 U.S. at 269; *id.*

Here, plaintiffs' benefits were terminated and are currently being recouped because overpayments were allegedly made in violation of System rules. Specifically, plaintiff Reed allegedly violated a System rule requiring that he "terminate employment in order to receive a retirement benefit and must not return to employment after retirement with the same employer before the effective date of" his retirement. *See* Me. Pub. Employee Ret. Sys., 94 411 CMR 410 § 5(2). Plaintiff Olfene allegedly violated a System rule stating that a "retiree who returns to employment after retirement with the same employer" may provide services "for no more than 60 days in one year." *Id.* at § 6(2)(C). The questions of whether a retiree terminated their employment or worked more than 60 days in one year are "well suited to resolution by documentary proof." *Mathews*, 582 F.2d at 255. In a line of somewhat analogous cases addressing whether

due process required a hearing prior to the recoupment of social security benefit overpayments, courts distinguished between questions of "waiver" and "reconsideration." *See id.* at 255-56 (distinguishing "waiver" cases from "reconsideration" cases); *Elliot*, 564 F.2d at 1231-34 (same); *see also Shannon*, 444 F. Supp. at 360 (noting that, unlike the issue of "waiver," plaintiffs did "not claim that a prerecoupment hearing is required on the reconsideration issue where credibility and veracity are not factors"). The question here is more similar to a "reconsideration request," which addresses the question of whether an overpayment actually occurred.

Moreover, the statutory decision to recoup overpayments based upon a System rule violation is governed by 5 M.R.S. § 17054(3),[13] which states in pertinent part:

> Any amounts due the retirement system as the result of overpayment or erroneous payment of benefits . . . may be recovered from an individual's contributions, any benefits or life insurance benefits payable under this Part to the individual or the beneficiary of the individual or any combination of contributions and benefits. If the overpayment or excess refund of contributions resulted from an unintentional mistake by an employee of the retirement system, the retiree or the recipient of the benefit or life insurance benefit, no interest may be collected by the retirement system on the amount to be recovered. The executive director may also take action to recover those amounts due from any amounts payable to the individual by any other state agency or by an action in a court of competent jurisdiction. Whenever the executive director makes a decision to recover any amounts under this subsection, that decision is subject to appeal under section 17451 . . . .

Plaintiffs proffer several suggestions as to what the executive director "might consider" in deciding to recoup overpayments. (*See* Pls. Mem. at 11-13.) However, the System interprets the word "may" as mandatory rather than discretionary. *See Schwanda v. Bonney*, 418 A.2d 163, 167 (Me. 1980) ("may" will be read as "shall" when used in a statute which imposes a public duty upon public officials). Thus, once an

---

[13] System rules state that failure to comply with relevant provisions "will result in immediate suspension of retiree's benefit" and the retiree must repay any overpayments made during the "period in which the retiree's benefit should have been suspended." Me. Pub. Employee Ret. Sys., 94 411 CMR 410 § 8(1).

overpayment resulting from a System rule violation has been found, the decision to recoup any overpayment of benefits is essentially automatic. As the question of whether an overpayment based on the violation of a System rule is well suited to written and documentary evidence, and the decision to recoup overpayments is automatic, an oral hearing at this stage is constitutionally unnecessary. Because plaintiffs' cannot demonstrate a likelihood of success regarding the merits of their due process claim, injunctive relief must be denied. *See Bangor Historic Track, Inc.*, 2003 ME 140, ¶ 10, 837 A.2d at 132-33.

The entry is:

(1) The defendants' motion to dismiss claims against the Board of Trustees, Maine Public Employees Retirement System (System) is GRANTED;

(2) The defendants' motion to dismiss claims against Executive Director Gail Drake Wright is DENIED;

(3) The plaintiffs' motion for preliminary injunction is DENIED.

December 4, 2008

Justice Joseph Jabar

JANE B OLFENE   - PLAINTIFF

Attorney for: JANE B OLFENE
DONALD FONTAINE   - RETAINED 05/05/2008
LAW OFFICES OF DONALD FONTAINE
97 INDIA STREET
PO BOX 7590
PORTLAND ME 04112


GREGORY D REED   - PLAINTIFF

Attorney for: GREGORY D REED
DONALD FONTAINE   - RETAINED 05/05/2008
LAW OFFICES OF DONALD FONTAINE
97 INDIA STREET
PO BOX 7590
PORTLAND ME 04112


vs
ME PUBLIC EMPLOYEES RETIRE SYSTEM BOARD(DISM) - DEFENDANT
,
Attorney for: ME PUBLIC EMPLOYEES RETIRE SYSTEM BOARD(DISM)
CHRISTOPHER MANN   - RETAINED
ATTORNEY GENERAL OFFICE OF AG
111 SEWALL STREET
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006

GAIL DRAKE WRIGHT   - DEFENDANT
EXECUTIVE DIRECTOR, 46 STATE HOUSE STATION
AUGUSTA ME 043330046
Attorney for: GAIL DRAKE WRIGHT
CHRISTOPHER MANN   - RETAINED 06/20/2008
ATTORNEY GENERAL OFFICE OF AG
111 SEWALL STREET
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CV-2008-00155


**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: CONSTITUTIONAL/CIVIL RIGHTS
Filing Date: 05/05/2008

## Docket Events:
05/08/2008 FILING DOCUMENT - COMPLAINT FILED ON 05/05/2008

05/08/2008 Party(s):  JANE B OLFENE
          ATTORNEY - RETAINED ENTERED ON 05/05/2008
          Plaintiff's Attorney: DONALD FONTAINE

          Party(s):  GREGORY D REED
          ATTORNEY - RETAINED ENTERED ON 05/05/2008
          Plaintiff's Attorney: DONALD FONTAINE

05/08/2008 Party(s):  JANE B OLFENE,GREGORY D REED
          MOTION - MOTION PRELIMINARY INJUNCTION FILED WITH AFFIDAVIT ON 05/05/2008

MOTION - MOTION PRELIMINARY INJUNCTION DENIED ON 12/04/2008
JOSEPH M JABAR , JUSTICE
THE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION IS DENIED.

12/05/2008 ORDER - COURT ORDER ENTERED ON 12/04/2008
JOSEPH M JABAR , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.    COPIES TO
PARTIES/COUNSEL                                                  SEE MOTION TO DISMISS AND
MOTION FOR PRELIMINARY INJUNCTION

12/05/2008 ORDER - COURT ORDER COPY TO REPOSITORIES ON 12/05/2008


A TRUE COPY
ATTEST: _____
                    Clerk

STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-08-155[1]

JANE B. OLFENE and
GREGORY D. REED,

Plaintiffs

v.

THE BOARD OF TRUSTEES, MAINE
PUBLIC EMPLOYEES RETIREMENT
SYSTEM,

and

GAIL DRAKE WRIGHT

Defendants

DECISION AND ORDER

Before the court are two motions: 1) plaintiffs' motion for certification of class action; and 2) defendant's motion to dismiss pursuant to M.R. Civ. P. 12(b)(1) and 12(b)(6).[2]

## DISCUSSION

### I.  Motion to Dismiss[3]

Defendant Wright[4] argues, pursuant to M.R. Civ. P. 12(b)(1) that plaintiffs' claims should be dismissed based on mootness.  See State v. Gleason, 404 A.2d 573, 578 (Me. 1979) ("[C]ourts should decline to decide issues which by virtue of valid and recognizable supervening circumstances have lost their controversial vitality.  Such

---

[1] This case has been consolidated with Quinney v. Board of Trustees, Maine Public Employees Retirement System, YORKSC CV-08-290. By order dated 12/30/08, the court (Brennan, J.) denied plaintiff's motion for a preliminary injunction in that case.

[2] The plaintiffs, on 1/21/09, moved for class certification. See M.R. Civ. P. 23. The defendant opposed this motion and, on 2/11/09, moved to dismiss the plaintiffs' claims. See M.R. Civ. P. 12(b)(1) & 12(b)(6).

[3] The court addresses this issue first, as "the usual and preferred practice is to rule on any pending motion to dismiss before addressing class certification." Greenburg v. Hiner, 173 Fed. Appx. 367, 368 n.2 (6th Cir. 2006).

[4] Defendant Wright is the only remaining defendant following this court's order dated 12/4/08.

cases are moot.") "The test [for mootness] is whether there remain sufficient practical effects flowing from the resolution of this litigation to justify the application of limited judicial resources." Id.

In a class action, the named plaintiffs, who purport to represent the class, must generally have standing at the time the action is initially brought and at the time the court determines whether to certify the supposed class.[5] See Tucker v. Phyfer, 819 F.2d 1030, 1033 (11th Cir. 1987); see also Cruz v. Farquharson, 252 F.3d 530, 533-34 (1st Cir. 2001) (generally a class action "must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved").[6] Plaintiffs presented a justiciable claim at the time of filing. See Olfene v. Bd. of Trs., Me. Pub. Employees Ret. Sys., CV-08-155 (Me. Super. Ct., Ken. Cty., Dec. 4, 2008) (Jabar, J.). Defendant Wright argues, however, that due to the passage of time—specifically the fact that plaintiffs' benefits are no longer being recouped—plaintiffs' claims have become moot. See Halfway House v. City of Portland, 670 A.2d 1377, 1379-80 (Me. 1996) ("A case, however, may become moot, and hence not justiciable, if the passage of time and the occurrence of events deprive the litigant of an ongoing stake in the controversy although the case raised a justiciable controversy at the time the complaint was filed."). Any injunction requiring that a

---

[5] At least one court, however, has concluded that a class action may survive despite the named plaintiff's claims becoming moot, as long as a motion for class certification is pending at the time that mootness overtakes the plaintiff's claims. See Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 135 (3d Cir. 2000).

[6] An exception to this rule exists where a named plaintiff's claim becomes moot after filing a motion for class certification but before the court has ruled on the motion. If so, the case will not be considered moot if the named plaintiff's claim is "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 399 (1980) (citing Gerstein v. Pugh, 420 U.S. 103, 110 n.11 (1975)). This exception applies only where there is "a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." Murphy v. Hunt, 455 U.S. 478, 482 (1982). A finding that the named plaintiffs' benefits will again be recouped is without a hearing is too speculative to meet this standard.

hearing is be held prior to the interception of benefits, defendant argues, will afford the plaintiffs no relief because their benefits are no longer being recouped.

However, even when a case is technically moot, three exceptions to the mootness doctrine allow a court to reach the merits of the case: (1) if sufficient collateral consequences will result from the determination of the questions presented so as to justify relief; (2) if the appeal contains questions of great public concern that, in the interest of providing future guidance to the bar and public we may address; or (3) if the issues are capable of repetition but evade review because of their fleeting or determinate nature. Foster v. Bloomberg, 657 A.2d 327, 329 n.1 (Me. 1995) (quoting In re Faucher, 558 A.2d 705, 706 (Me. 1989)). The constitutionality of the System's policy of initially intercepting retirement benefits without a hearing is undoubtedly an issue of great concern to the named parties involved in this case (Olfene, Reed, and Quinney). Moreover, although, as discussed below in the class certification context, it is unduly speculative and premature to determine which or how many System members will actually be affected by the System's policy, providing both the System and the System's members with guidance on this issue is important both as a constitutional and practical matter. In sum, "there remain sufficient practical effects flowing from the resolution of [the] litigation to justify the application of limited judicial resources." State v. Irish, 551 A.2d 860, 861-62 (Me. 1988) (quoting State v. Gleason, 404 A.2d 573, 578 (Me. 1979)).

II.   Motion to Certify Class Action:

Before delving into an analysis of M.R. Civ. P. 23's requirements, a threshold matter should be addressed. The essential thrust of defendant's argument, both directly and by incorporation in her arguments regarding class certification, is that none of the members of the proposed class have suffered any form of injury or have any stake in a justiciable controversy. This argument relates to the concept of standing. See Allen v.

Wright, 468 U.S. 737, 751 (1984) ("At the core of the standing doctrine is the requirement that a plaintiff "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."); Halfway House, 670 A.2d at 1380 (The "'gist of the question of standing' is whether the party seeking review has a sufficient personal stake in a justiciable controversy to assure the existence of that 'concrete adverseness' that facilitates diligent development of the legal issues presented."). Although, unlike federal courts, Maine's standing jurisprudence is prudential, rather than constitutional, Roop v. City of Belfast, 2007 ME 32, ¶ 7, 915 A.2d 966, 968, a party must still have "a sufficient personal stake in the controversy," to seek a judicial resolution. Madore v. Me. Land Use Regulation Comm'n, 1998 ME 178, ¶ 8, 715 A.2d 157, 160.

Each member of a class need not submit evidence of personal standing. See, e.g., Rozema v. The Marshfield Clinic, 174 F.R.D. 425, 444 (W.D. Wis. 1997) ("Those represented in a class action are passive members and need not make individual showings of standing."). At the federal level, and presumably in Maine, inclusion as member of a class action does not automatically vitiate the need for standing. See Presbyterian Church of Sudan v. Talisman Energy, Inc., 244 F. Supp. 2d 289, 334 (S.D.N.Y. 2003) (noting that "each member of the class must have standing with respect to injuries suffered as a result of defendants' actions"); M.R. Civ. P. 82 ("rules shall not be construed to extend . . . the jurisdiction of the . . . Superior Court"). However, as the U.S. Supreme Court has noted, and as will be apparent in the discussion below, class certification issues are "logically antecedent" to concerns such as standing. Ortiz v. Fibreboard Corp., 527 U.S. 815, 831 (1999). Accordingly, the court will address class certification directly, mindful that M.R. Civ. P. 23's certification requirements should be interpreted in conjunction with justiciability constraints, such as standing. Id.

Plaintiffs describe the class as follows: "All current and future members of the Maine Public Employees Retirement System who have or may retire before their retirement age."[7] This class was chosen presumably because this class is subject to enforcement of Me. Pub. Employee Ret. Sys., 94 411 CMR 410 (hereinafter Chapter 410) (early retirement provisions).[8]

M.R. Civ. P. 23(a) provides that a class action suit may only be maintained if the following four elements are present:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to the elements stated above, the proposed class action must satisfy one of the three prerequisites of M.R. Civ. P. 23(b).

"The party seeking certification bears the burden of demonstrating under a 'strict burden of proof' that all of the requirements of Rule 23 are clearly met."[9] Millett v. Atlantic Richfield Co., 2000 Me. Super. LEXIS 39, *17 (March 2, 2000) (citing Rex v. Owens, 585 F.2d 432, 435 (10th Cir. 1978)). While the allegations of the complaint are to be taken as admitted for purposes of deciding whether a class should be certified, the court "'certainly may look past the pleadings to determine whether the requirements of rule 23 have been met [when helpful to] . . . understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of

---

[7] Plaintiffs' complaint describes the purported class as "teachers who have retired under the Maine Public Employees Retirement System and who have been determined by the Defendants to be eligible for service retirement benefits and who are currently receiving retirement benefits under the Maine Public Employees Retirement System." (Pls.' Compl. ¶ 22.)

[8] Section 8(1) of chapter 410 states that failure to comply with relevant provisions of early retirement "will result in immediate suspension of retiree's benefit" and the retiree must repay any overpayments made during the "period in which the retiree's benefit should have been suspended."

[9] Though the burden of proof is described as "strict," the quantum of proof for class certification remains the familiar "preponderance of the evidence" standard. See Karofsky v. Abbott Laboratories, 1997 Me. Super. LEXIS 316, *12 (October 5, 1997).

the certification issues.'" Id. at *18-*19 (quoting Castano v. Am. Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996)).

   *a.  M.R. Civ. P. 23(a)(1)—Numerosity*

Under Rule 23(a)(1), the plaintiff must show that the class "is so numerous that joinder of all members is impracticable." M.R. Civ. P. 23(a)(1). Plaintiffs argue that, as of 4/08, there were 650 members of the System who had retired at an age below their normal retirement age since 2004. Additionally, plaintiffs urge the court to take judicial notice that there are thousands of System employees, all of whom are eligible to retire early if they so wish.

Defendant contends this figure is without an evidentiary basis, and based on pure speculation. See Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993) ("plaintiffs must show some evidence of or reasonably estimate the number of class members"). The defendant's argument is that none of the persons suggested in the plaintiffs' proposed class have been adversely affected by Chapter 410. Arguing that they will be affected, defendant contends, is pure speculation. The court agrees.

Plaintiffs' argument that the proffered class is appropriate is essentially based on the following syllogism: (1) the named plaintiffs' constitutional due process rights were violated when their retirement benefits were recouped without a hearing; (2) the recoupment procedures employed by System officials were typical of those used generally; (3) the proposed class of plaintiffs' will be subject to the same recoupment procedures in the future if they are suspected of violating Chapter 410; therefore (4) it is likely that the proposed class's rights will be violated in the future. However, because it is impossible to ascertain with any reasonable certainty how many members of the proposed class will violate—or will be suspected of violating—Chapter 410, plaintiffs' argument regarding the size of the proposed class is mere speculation. See Russo v.

CVS Pharm., Inc., 201 F.R.D. 291, 295 (D. Conn. 2001) ("an individual civil rights case cannot be transformed into a class action simply by virtue of the ipse dixit that since it happened to the plaintiff, it must have happened to others, without some indication allowing the Court to make the 'reasonable estimate' that the law requires"). While plaintiffs need not show that each member of the proposed class has actually been injured by the defendant's actions, they must present some reasonable estimate of those with a "real and immediate" threat of injury. See Lopez v. Garriga, 917 F.2d 63, 67 (1st Cir. 1990) ("An injunction-seeking plaintiff must establish that he "'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'").

   b.  *M.R. Civ. P. 23(a)(2) — Commonality*

Plaintiffs must also demonstrate that "there are questions of law or fact common to the class." M.R. Civ. P. 23(a)(2). Plaintiffs contend that the central issue in this case is whether the defendant should be constitutionally permitted to continue her current practice of suspending retirement benefits, without a hearing, whenever a staff person of the System concludes that a member has violated chapter 410. Plaintiffs argue that the defendant's defense—that the System is not restricted by due process from terminating benefits and recouping alleged overpayments without first providing a hearing—is a common link.

Again, however, the proposed class to be certified—all current and future early-retiring System employees—have *no* real or immediate injury, let alone a similar injury. The purported class may see no benefit whatsoever. See In re Am. Med. Sys., Inc., 75 F.3d 1069, 1080 (6th Cir. 1996) ("the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member]

to be litigated"). Like the "numerosity" analysis, because none of the purported class have violated, or are reasonably certain to be suspected of violating chapter 410, plaintiffs have not met the commonality requirement.

    *c.  M.R. Civ. P. 23(a)(3) — Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." M.R. Civ. P. 23(a)(3). The typicality requirement is "'intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented.'" Millett, 2000 Me. Super. LEXIS 39 at *24 (quoting Baby Neal ex rel Kanter v. Casey, 43 F.3d 48, 57 (3rd Cir. 1994)). The test for establishing typicality is not a demanding one. Id. at *25 (quoting Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 625 (5th Cir. 1999)). The question of typicality is decided by whether the claims of all class members arise out of the same events and require the same legal arguments to establish liability. Id. (quoting Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)). The claims, however, do no need to be identical. Id.

Plaintiffs claim that the named plaintiffs have characteristics that match the proposed class, namely: 1) they are current and future members of the System; 2) they have retired early; and 3) they have been subject to, and will in the future be subject to, Chapter 410's allegedly unconstitutional lack of a pre-deprivation hearing. Again, however, the plaintiffs can establish with no reasonable certainty that any member of the proffered class will be subject to allegedly unconstitutional recoupment procedures pursuant to Chapter 410.

    *d.  M.R Civ. P. 23(a)(4) — Adequacy of Representation*

Rule 23(a)(4) requires a party seeking class certification to show that "the representative parties will fairly and adequately protect the interests of the class." M.R. Civ. P. 23(a)(4). "The rule has two parts. The moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985). There seems to be no dispute that plaintiffs' counsel is sufficiently experienced and qualified to conduct this litigation as a class action suit.

Defendant argues, however, that plaintiffs' cannot "fairly and adequately protect the interests of the class." Here, "[t]he question is: Will the representative parties put up a genuine fight?" In re Workers' Comp., 130 F.R.D. 99, 107 (D. Minn. 1990). Defendant argues that plaintiffs have nothing to gain, and will receive no benefit from an injunction as their benefits have been fully recouped at this point, and, as discussed above, they are only entitled to prospective relief. The defendant questions whether the named plaintiffs have an interest in "actively and vigorously prosecuting the goal to restrict [the System's] recoupments by an injunction." Although the court disagrees with the defendant's argument on this issue—the court can discern no substantial conflict of interests[10] between the named plaintiffs and proposed class—plaintiffs need to demonstrate compliance with all M.R. Civ. P. 23 certification requirements, and have

---

[10] As a general rule, "only a conflict which goes to the very subject matter of the litigation will defeat a party's claim to representative status." Jenson v. Cont'l Fin. Corp., 404 F. Supp. 806, 810 (D. Minn. 1975).

not done so. Accordingly, despite plaintiffs' success on this element, their motion to certify a class must be denied.[11]

The entry is:

(1) The Defendant's Motion to Dismiss is DENIED.

(2) The Plaintiffs' Motion to Certify Class is DENIED;

June _6_, 2009

Justice Joseph Jabar

---

[11] Because the plaintiffs have failed to meet the certification requirements of M.R. Civ. P. 23(a), the court declines to address whether the plaintiffs have satisfied one of the additional criteria set forth in M.R. Civ. P. 23(b).

**DOCKET RECORD**

Attorney for: JANE B OLFENE
DONALD FONTAINE  - RETAINED 05/05/2008
LAW OFFICES OF DONALD FONTAINE
97 INDIA STREET
PO BOX 7590
PORTLAND ME 04112


GREGORY D REED  - PLAINTIFF

Attorney for: GREGORY D REED
DONALD FONTAINE  - RETAINED 05/05/2008
LAW OFFICES OF DONALD FONTAINE
97 INDIA STREET
PO BOX 7590
PORTLAND ME 04112


vs
ME PUBLIC EMPLOYEES RETIRE SYSTEM BOARD(DISM) - DEFENDANT

'
Attorney for: ME PUBLIC EMPLOYEES RETIRE SYSTEM BOARD(DISM)
CHRISTOPHER MANN  - RETAINED
ATTORNEY GENERAL OFFICE OF AG
111 SEWALL STREET
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006


GAIL DRAKE WRIGHT  - DEFENDANT
EXECUTIVE DIRECTOR, 46 STATE HOUSE STATION
AUGUSTA ME 043330046
Attorney for: GAIL DRAKE WRIGHT
CHRISTOPHER MANN  - RETAINED
ATTORNEY GENERAL OFFICE OF AG
111 SEWALL STREET
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006


Filing Document: COMPLAINT                     Minor Case Type: CONSTITUTIONAL/CIVIL RIGHTS
Filing Date: 05/05/2008

## Docket Events:

05/08/2008 FILING DOCUMENT - COMPLAINT FILED ON 05/05/2008

05/08/2008 Party(s):  JANE B OLFENE
           ATTORNEY - RETAINED ENTERED ON 05/05/2008
           Plaintiff's Attorney: DONALD FONTAINE

           Party(s):  GREGORY D REED
           ATTORNEY - RETAINED ENTERED ON 05/05/2008
           Plaintiff's Attorney: DONALD FONTAINE

05/08/2008 Party(s):  JANE B OLFENE,GREGORY D REED
           MOTION - MOTION PRELIMINARY INJUNCTION FILED WITH AFFIDAVIT ON 05/05/2008

Plaintiff's Attorney:  DONALD FONTAINE
AND AFFIDAVIT OF GREGORY D. REED W/ ATTACHMENTS, AFFIDAVIT OF JANE B. OLFENE W/
ATTACHMENTS, AFFIDAVIT OF DONALD F. FONTAINE, ESQ. W/ ATTACHMENT, MEMORANDUM OF LAW,
REQUEST FOR HEARING, PROPOSED ORDER.

05/08/2008 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 05/05/2008

06/13/2008 Party(s):  ME PUBLIC EMPLOYEES RETIRE SYSTEM BOARD(DISM)
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 06/05/2008
           Plaintiff's Attorney:  DONALD FONTAINE
           GAIL DRAKE SERVED IN HAND BY CIVIL DEPUTY FOR MAINE PUBLIC EMPLOYEES RET   SYSTEM ON
           6/5/08.

06/13/2008 Party(s):  ME PUBLIC EMPLOYEES RETIRE SYSTEM BOARD(DISM)
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 06/05/2008
           Plaintiff's Attorney:  DONALD FONTAINE
           GAIL DRAKE SERVED IN HAND AS BOARD OF TRUSTEE FOR MAINE PUBLIC EMPLYEED RETSYSTEM ON
           6/5/08.

06/20/2008 Party(s):  ME PUBLIC EMPLOYEES RETIRE SYSTEM BOARD(DISM),GAIL DRAKE WRIGHT
           MOTION - MOTION TO DISMISS FILED ON 06/20/2008
           Defendant's Attorney: CHRISTOPHER MANN
           WITH MEMORANDUM OF LAW, DRAFT ORDER, NOTICE OF HEARING

06/26/2008 Party(s):  ME PUBLIC EMPLOYEES RETIRE SYSTEM BOARD(DISM),GAIL DRAKE WRIGHT
           OTHER FILING - OPPOSING MEMORANDUM FILED ON 06/20/2008
           Defendant's Attorney: CHRISTOPHER MANN
           OPPOSITION TO MOTION FOR PRELIMINARY RESTRAINING ORDER.  AFFIDAVIT OF JOHN C. MILAZZO

06/26/2008 Party(s):  ME PUBLIC EMPLOYEES RETIRE SYSTEM BOARD(DISM)
           ATTORNEY - RETAINED ENTERED ON 06/20/2008
           Defendant's Attorney: CHRISTOPHER MANN

06/26/2008 Party(s):  GAIL DRAKE WRIGHT
           ATTORNEY - RETAINED ENTERED ON 06/20/2008
           Defendant's Attorney: CHRISTOPHER MANN

06/26/2008 Party(s):  JANE B OLFENE,GREGORY D REED
           MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 06/26/2008
           Plaintiff's Attorney:  DONALD FONTAINE
           CONSENT MOTION FOR ENLARGEMENT OF TIME TO RESPOND TO MOTION TO DISMISS AND TO REPLY TO
           OPPOSITION TO MOTION FOR PRELIMINARY RESTRAINING ORDER

07/08/2008 Party(s):  JANE B OLFENE,GREGORY D REED
           MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 07/03/2008
           JOSEPH M JABAR , JUSTICE
           COPIES TO PARTIES/COUNSEL

07/14/2008 Party(s):  JANE B OLFENE,GREGORY D REED
           LETTER - FROM PARTY FILED ON 06/27/2008
           Plaintiff's Attorney:  DONALD FONTAINE
           LETTER INDICATES OPPOSING CUNSEL FOR THE DEF IS NOT OPPOSED TO THE CONSENT MOTION FOR
           ENLGARDGMENT OF TIME TO RESPOND TO MOTION TO DISMISS.

07/16/2008 HEARING - MOTION PRELIMINARY INJUNCTION SCHEDULED FOR 08/05/2008 @ 3:00  in Room No.  2

07/16/2008 HEARING - MOTION PRELIMINARY INJUNCTION NOTICE SENT ON 07/16/2008

07/17/2008 HEARING - MOTION PRELIMINARY INJUNCTION CONTINUED ON 07/17/2008
        TO SEPTEMBER LIST

08/13/2008 Party(s):  JANE B OLFENE
        OTHER FILING - OPPOSING MEMORANDUM FILED ON 08/11/2008
        Plaintiff's Attorney:  DONALD FONTAINE
        PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS WITH INCORPORATED MEMORANDUM OF
        LAW AND REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY RESTRAINING ORDER.

08/13/2008 Party(s):  JANE B OLFENE
        OTHER FILING - REPLY MEMORANDUM FILED ON 08/11/2008
        SEE PREVIOUS ENTRY.

08/13/2008 HEARING - MOTION PRELIMINARY INJUNCTION SCHEDULED FOR 09/02/2008 @ 9:00  in Room No.  2

08/13/2008 HEARING - MOTION PRELIMINARY INJUNCTION NOTICE SENT ON 08/13/2008

08/18/2008 Party(s):  ME PUBLIC EMPLOYEES RETIRE SYSTEM BOARD(DISM)
        OTHER FILING - REPLY MEMORANDUM FILED ON 08/18/2008
        Defendant's Attorney: CHRISTOPHER MANN

09/03/2008 HEARING - MOTION PRELIMINARY INJUNCTION HELD ON 09/02/2008
        JOSEPH M JABAR , JUSTICE
        Defendant's Attorney: CHRISTOPHER MANN
        Plaintiff's Attorney:  DONALD FONTAINE

09/03/2008 Party(s):  JANE B OLFENE,GREGORY D REED
        MOTION - MOTION PRELIMINARY INJUNCTION UNDER ADVISEMENT ON 09/02/2008
        JOSEPH M JABAR , JUSTICE

09/03/2008 Party(s):  ME PUBLIC EMPLOYEES RETIRE SYSTEM BOARD(DISM),GAIL DRAKE WRIGHT
        MOTION - MOTION TO DISMISS UNDER ADVISEMENT ON 09/02/2008
        JOSEPH M JABAR , JUSTICE

12/05/2008 Party(s):  ME PUBLIC EMPLOYEES RETIRE SYSTEM BOARD(DISM),GAIL DRAKE WRIGHT
        MOTION - MOTION TO DISMISS GRANTED ON 12/04/2008
        JOSEPH M JABAR , JUSTICE
        COPIES TO PARTIES/COUNSEL                                              THE DEFENDANTS'
        MOTION TO DISMISS CLAIMS AGAINST THE BOARD OF TRUSTEES, MAINE PUBLIC EMPLOYEES RETIREMENT
        SYSTEM (SYSTEM) IS GRANTED.

12/05/2008 Party(s):  ME PUBLIC EMPLOYEES RETIRE SYSTEM BOARD(DISM),GAIL DRAKE WRIGHT
        MOTION - MOTION TO DISMISS DENIED ON 12/04/2008
        JOSEPH M JABAR , JUSTICE
        COPIES TO PARTIES/COUNSEL                                              THE DEFENDANTS'
        MOTION TO DISMISS CLAIMS AGAINST EXECUTIVE DIRECTOR GAIL DRAKE WRIGHT IS DENIED.

12/05/2008 Party(s):  JANE B OLFENE,GREGORY D REED

MOTION - MOTION PRELIMINARY INJUNCTION DENIED ON 12/04/2008
JOSEPH M JABAR , JUSTICE
THE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION IS DENIED.

12/05/2008 ORDER - COURT ORDER ENTERED ON 12/04/2008
JOSEPH M JABAR , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.   COPIES TO
PARTIES/COUNSEL                                                    SEE MOTION TO DISMISS AND
MOTION FOR PRELIMINARY INJUNCTION

12/05/2008 ORDER - COURT ORDER COPY TO REPOSITORIES ON 12/05/2008

01/21/2009 Party(s): GAIL DRAKE WRIGHT
RESPONSIVE PLEADING - ANSWER FILED ON 01/20/2009
Defendant's Attorney: CHRISTOPHER MANN

01/21/2009 Party(s): GAIL DRAKE WRIGHT
MOTION - MOTION FOR LATE ENTRY FILED ON 01/20/2009
Defendant's Attorney: CHRISTOPHER MANN
WITH MEMORANDUM OF LAW, DRAFT ORDER, NOTICE OF HEARING                     UNOPPOSED
MOTION.

01/22/2009 Party(s): GAIL DRAKE WRIGHT
MOTION - MOTION FOR LATE ENTRY GRANTED ON 01/21/2009
JOSEPH M JABAR , JUSTICE
COPIES TO PARTIES/COUNSEL

01/23/2009 Party(s): JANE B OLFENE,GREGORY D REED
MOTION - OTHER MOTION FILED WITH AFFIDAVIT ON 01/21/2009
Plaintiff's Attorney:  DONALD FONTAINE
MOTION FOR CERTIFICATION OF CLASS ACTION, MEMORANDUM IN SUPPORT OF MOTION,AFFIDAVIT OF
DONALD FONTAINE AND PROPOSED ORDER.

02/13/2009 Party(s): GAIL DRAKE WRIGHT
MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 02/09/2009
Defendant's Attorney: CHRISTOPHER MANN
TO EXTEND DEADLINE TO FILE RESPONSE

02/13/2009 Party(s): GAIL DRAKE WRIGHT
OTHER FILING - OPPOSING MEMORANDUM FILED ON 02/11/2009
Defendant's Attorney: CHRISTOPHER MANN
TO PLAINTIFFS' MOTION TO CERTIFY CLASS

02/13/2009 Party(s): GAIL DRAKE WRIGHT
MOTION - MOTION TO DISMISS FILED ON 02/11/2009
Defendant's Attorney: CHRISTOPHER MANN
WITH MEMORANDUM OF LAW

02/17/2009 Party(s): GAIL DRAKE WRIGHT
MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 02/17/2009
JOHN NIVISON , JUSTICE
COPIES TO PARTIES/COUNSEL

02/24/2009 Party(s):  JANE B OLFENE,GREGORY D REED
           MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 02/23/2009
           Plaintiff's Attorney:  DONALD FONTAINE
           UNOPPOSED MOTION TO EXTEND DEADLINE FOR REPLY BRIEF.


03/04/2009 Party(s):  JANE B OLFENE,GREGORY D REED
           MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 03/03/2009
           JOSEPH M JABAR , JUSTICE
           COPIES TO PARTIES/COUNSEL                                       EXTENDED TO
           MARCH 6, 2009


03/12/2009 OTHER FILING - OTHER DOCUMENT FILED ON 03/12/2009
           ORDER IN YORK COUNTY CV-08-290 SIGNED BY J. BRENNAN TO CONSOLIDATE WITH THIS CASE.


03/18/2009 HEARING - OTHER MOTION SCHEDULED FOR 04/22/2009 @ 1:00  in Room No.  2
           PENDING MOTIONS


03/18/2009 HEARING - OTHER MOTION NOTICE SENT ON 03/18/2009
           PENDING MOTIONS


03/31/2009 Party(s):  JANE B OLFENE
           MOTION - OTHER MOTION FILED WITH AFFIDAVIT ON 03/31/2009
           Plaintiff's Attorney:  DONALD FONTAINE
           OF PLAINTIFF GAIL P QUINNEY TO BE DESIGNATED CLASS REPRESENTATIVE WITH      SUPPORTING
           MEMORANDUM OF LAW, AFFIDAVIT OF GAIL QUINNEY AND PROPOSED ORDER.


04/24/2009 HEARING - OTHER MOTION HELD ON 04/22/2009
           JOSEPH M JABAR , JUSTICE
           Defendant's Attorney: CHRISTOPHER MANN
           Plaintiff's Attorney:  DONALD FONTAINE
           PENDING MOTIONS


05/04/2009 Party(s):  JANE B OLFENE
           MOTION - OTHER MOTION UNDER ADVISEMENT ON 04/22/2009
           JOSEPH M JABAR , JUSTICE
           OF PLAINTIFF GAIL P QUINNEY TO BE DESIGNATED CLASS REPRESENTATIVE WITH      SUPPORTING
           MEMORANDUM OF LAW, AFFIDAVIT OF GAIL QUINNEY AND PROPOSED ORDER.


05/04/2009 Party(s):  GAIL DRAKE WRIGHT
           MOTION - MOTION TO DISMISS UNDER ADVISEMENT ON 04/22/2009
           JOSEPH M JABAR , JUSTICE


05/04/2009 Party(s):. JANE B OLFENE,GREGORY D REED
           MOTION - OTHER MOTION UNDER ADVISEMENT ON 04/22/2009
           JOSEPH M JABAR , JUSTICE
           MOTION FOR CERTIFICATION OF CLASS ACTION, MEMORANDUM IN SUPPORT OF MOTION,AFFIDAVIT OF
           DONALD FONTAINE AND PROPOSED ORDER.


06/08/2009 Party(s):  GAIL DRAKE WRIGHT
           MOTION - MOTION TO DISMISS DENIED ON 06/08/2009
           JOSEPH M JABAR , JUSTICE
           COPIES TO PARTIES/COUNSEL

06/08/2009 Party(s):  JANE B OLFENE
              MOTION - OTHER MOTION DENIED ON 06/08/2009
              JOSEPH M JABAR , JUSTICE
              OF PLAINTIFF GAIL P QUINNEY TO BE DESIGNATED CLASS REPRESENTATIVE WITH     SUPPORTING
              MEMORANDUM OF LAW, AFFIDAVIT OF GAIL QUINNEY AND PROPOSED ORDER.COPIES MAILED TO ATTYS. OF
              RECORD.

06/09/2009 Party(s):  JANE B OLFENE,GREGORY D REED
              MOTION - OTHER MOTION DENIED ON 06/08/2009
              JOSEPH M JABAR , JUSTICE
              MOTION FOR CERTIFICATION OF CLASS ACTION, MEMORANDUM IN SUPPORT OF MOTION,AFFIDAVIT OF
              DONALD FONTAINE AND PROPOSED ORDER.                    COPIES TO ATTYS. OF RECORD.


A TRUE COPY
ATTEST:  _____
                        Clerk